SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Carl J. Garrison (A-38-15) (076537)**

**Argued October 27, 2016 -- Decided March 20, 2017**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the admission into evidence of an uncharged incident—a strip poker game that took place in another state—constituted error.

A Gloucester County grand jury indicted defendant Carl Garrison on several counts of child sexual abuse. The charges stemmed from allegations of abuse against his girlfriend's daughter, Joan. (In order to protect the confidentiality of the juvenile victim in this case, the Court uses fictitious names to refer to the minor and her relatives.) Joan testified that defendant abused her throughout the summer of 2010, when she was eleven years old, both in Alabama and New Jersey.

Prior to trial, defendant moved to exclude evidence of events that took place in Alabama, including a strip poker game, as inadmissible other-crimes evidence under N.J.R.E. 404(b). The trial court found that the evidence of what occurred in Alabama was admissible not as other-crimes evidence, but as intrinsic evidence of the charged crimes under State v. Rose, 206 N.J. 141 (2011). The court provided limiting instructions to the jury at the time the evidence was introduced and in the final charge to the jury.

During the trial, the State also presented an expert witness, Dr. Mary Theresa Baker, who testified with regard to the physical characteristics child-abuse victims may exhibit. Dr. Baker examined Joan and found no evidence of physical abuse. As part of her testimony, Dr. Baker stated that "[o]verall, 95 to 96 percent of children, who give a credible disclosure of sexual contact, have a normal or non-specific exam."

The jury subsequently convicted defendant of three counts of first-degree aggravated sexual assault, two counts of second-degree sexual assault, and one count of third-degree endangering the welfare of a child. Defendant received an aggregate sentence of fifty-two years in prison, with an eighty-five percent period of parole ineligibility.

Defendant appealed, arguing that evidence of the strip poker game was improperly admitted. Although not raised below, defendant also contended that the admission of Dr. Baker's statistics-based testimony was error. The Appellate Division reversed defendant's convictions and remanded for a new trial. The panel rejected the State's contention that evidence of the strip poker game was intrinsic to the crimes charged and determined that this evidence should have been evaluated under N.J.R.E. 404(b). The Appellate Division then concluded that the strip poker evidence failed to satisfy Rule 404(b) and that its admission was not harmless error. In a footnote, the panel agreed that Dr. Baker's testimony amounted to an improper opinion of Joan's credibility and constituted plain error.

The Court granted the State's petition for certification. 223 N.J. 558 (2015).

**HELD**: The evidence of the strip poker game meets the rigorous test set forth in State v. Cofield, 127 N.J. 328 (1992), and therefore was admissible under Rule 404(b). The evidence was properly admitted at trial with an appropriate limiting instruction.

1. In order to minimize the dangers presented by other-crimes evidence, the Court has insisted that evidence proffered under Rule 404(b) must pass a rigorous test, set forth in State v. Cofield: (1) The evidence of the other crime must be admissible as relevant to a material issue; (2) It must be similar in kind and reasonably close in time to the offense charged; (3) The evidence of the other crime must be clear and convincing; and (4) The probative value of the evidence must not be outweighed by its apparent prejudice. (pp. 12-13)

2. Under the first prong of the Cofield test, the strip poker game has direct relevance "to a material issue in dispute." A linchpin of the defense's theory of the case was that any inappropriate actions originated with Joan. Defendant repeatedly denied wrongdoing, and, at trial, portrayed Joan as "the aggressor." The testimony that defendant initiated the strip poker game enables the jury to better weigh defendant's assertions. Thus, the testimonial evidence of the strip poker game is relevant because it tends "to prove or disprove" whether any inappropriate action originated with Joan. Moreover, the strip poker game is admissible against defendant under Rule 404(b) as evidence of his plan to further desensitize Joan to sexual conduct so that he could continue to abuse her. (pp. 13-16)

3. The strip poker evidence satisfies the second prong of the Cofield test. Defendant is hard-pressed to contest the close temporal relationship between the strip poker game and the sexual assaults with which he was charged. (p. 17)

4. Under the third prong of the Cofield framework, evidence of the other crime must be clear and convincing. Here, it is undisputed that defendant played strip poker with Joan and her sister. Although the precise details of the incident, including which articles of clothing were removed and who initiated the game, were subject to dispute, the evidence that defendant played strip poker with the girls was beyond clear and convincing. (pp. 17-18)

5. Finally, the Court considers whether the probative value of the strip poker evidence is outweighed by its apparent prejudice. The probative value of the evidence is high because it provided the jury with evidence of a continuous course of conduct concerning defendant's abuse of Joan throughout the summer. Moreover, evidence of the strip poker game was just one of many incidents the jury heard about. The jury also heard detailed testimony regarding numerous sexual acts, including Joan's testimony that she had sex with defendant on several occasions in New Jersey and in Alabama. In the context of the record as a whole, it is unlikely the strip poker evidence had "a probable capacity to divert the minds of the jurors" when far more prejudicial evidence was presented. (pp. 18-21)

6. Having determined that the evidence of the strip poker game satisfies each of the four prongs of the Cofield test, the Court considers whether its admission was accompanied by a sufficient limiting instruction. Immediately after Joan testified, the court instructed the jury that the evidence of conduct that occurred in Alabama was to be "used only with regard to the charges that have been indicted in New Jersey" and that they were "not to speculate as to whether this conduct resulted in any charges in Alabama." In its final charge, the court also provided a limiting instruction to the jury. Although that instruction did not specifically address the strip poker game or the sexual assaults in Alabama, the court instructed the jury that it was not to use the testimony it heard about defendant's other criminal conduct for propensity purposes. When viewed as a whole, it cannot be said that the challenged instruction is "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. The essential principle—that the jury could not use the strip poker game for propensity purposes—was adequately communicated to the jury even if the trial court in its final charge did not refer specifically to the Alabama evidence. Therefore, the 404(b) evidence was properly admitted with an appropriate limiting instruction. Because the Court concludes that evidence of the strip poker game is admissible under the rigorous standard of Rule 404(b), it does not address the State's arguments regarding intrinsic evidence. (pp. 21-24)

7. The Court notes the testimony of Dr. Baker—that "[o]verall, 95 to 96 percent of children, who give a credible disclosure of sexual contact, have a normal or non-specific exam"—and finds the comment problematic. However, the error does not mandate reversal. Because defendant did not object or raise the issue during trial, the Court evaluates his arguments under a plain-error standard of review. Dr. Baker's stray remark, to which defendant did not object at trial, did not enable the jury to reach a result that it otherwise might not have reached. (pp. 24-27)

The judgment of the Appellate Division is **REVERSED**, and defendant's convictions are **REINSTATED**. The matter is **REMANDED** to the Appellate Division for consideration of the issue not addressed by that court concerning defendant's sentence.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

CARL J. GARRISON,

    Defendant-Respondent.

       Argued October 27, 2016 – Decided March 20, 2017

       On certification to the Superior Court,
       Appellate Division.

       Sarah E. Ross, Deputy Attorney General,
       argued the cause for appellant (Christopher
       S. Porrino, Attorney General of New Jersey,
       attorney).

       Mark H. Friedman, Assistant Deputy Public
       Defender, argued the cause for respondent
       (Joseph E. Krakora, Public Defender,
       attorney).

    JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

    In this appeal, we consider whether the admission into evidence of an uncharged incident constituted error. Prior to his trial on several counts of child sexual abuse, defendant Carl J. Garrison moved to exclude evidence of events, including a strip poker game, that took place in another state as inadmissible other-crimes evidence under N.J.R.E. 404(b). The trial court found that the evidence of what occurred in the

other state was admissible not as other-crimes evidence, but as intrinsic evidence of the charged crimes under State v. Rose, 206 N.J. 141 (2011).  Defendant was subsequently convicted on three counts of first-degree aggravated sexual assault, two counts of second-degree sexual assault, and one count of third-degree endangering the welfare of a child.

On appeal, the Appellate Division reversed defendant's convictions and remanded for a new trial.  The panel concluded that the evidence of the strip poker game was not admissible under Rule 404(b) or as intrinsic evidence under Rose.

For the reasons set forth in this opinion, we hold that the evidence was admissible under Rule 404(b).  Accordingly, we reverse the judgment of the Appellate Division and reinstate defendant's convictions without reaching the question of whether the strip poker game is intrinsic to the crimes charged.

I.

A.

In the summer of 2010, defendant Carl J. Garrison, then fifty-three years old, dated Harriet and often stayed at her home in New Jersey, where she lived with her two daughters, Joan and Nancy.[1]  That summer, defendant, Harriet, Joan, and Nancy

---

[1]  In order to protect the confidentiality of the juvenile victim in this case, we use fictitious names to refer to the minor and her relatives.  In the interest of consistency, we use the same fictitious names used by the Appellate Division.

also stayed in Alabama for several weeks. Joan, who was eleven years old in Summer 2010, testified that defendant abused her throughout the summer, both in Alabama and New Jersey.

Joan testified that the abuse started in June 2010, shortly after she finished fifth grade. The first incident occurred while she was watching a television show on defendant's computer. Defendant put his hands down Joan's pants, digitally penetrated her vagina, and touched her breasts with his hands and mouth.

In the ensuing weeks, defendant exposed himself to Joan, showed her pornography on his computer, and digitally penetrated her anus. Defendant had oral and vaginal intercourse with Joan multiple times in both New Jersey and Alabama. Joan stated that, over the course of the summer, defendant had intercourse with her "around eight or more times." On one occasion, Nancy, who was nine years old at the time, saw her sister washing defendant's penis with a washcloth after intercourse.

In July 2010, while in Alabama, defendant played strip poker with Joan and Nancy. The girls testified that they were playing together when defendant approached them and told them about strip poker. Nancy was asked twice whose idea it was to play strip poker and both times replied, "Carl Garrison's." According to defendant, they were just playing cards and the game moved to strip poker at Joan's suggestion. Defendant

3

testified that he took off his shirt and pants and was in his underwear. When asked whether Joan and Nancy stripped to their underwear, defendant replied: "No. They stripped to their bras. Yeah, their bras, underwear. They didn't take -- I'm not sure if they took their pants off or not. I don't think they did. So it was -- it wasn't nothing major." Nancy testified that she and Joan took their pants and shirts off and only had on panties at one point. She also stated that defendant took off his underwear and was naked with his penis exposed.

Defendant's abuse of Joan continued once they returned to New Jersey. Joan testified that the abuse ceased in September, before school started. During the course of the abuse, defendant told Joan not to tell anyone about it because it would ruin his relationship with her mother and he would go to prison.

In September 2010, the Division of Child Protection and Permanency[2] (Division) removed Joan and Nancy from their mother's custody due to defendant's involvement in an unrelated assault. The Division placed the girls with their father, Sam, in December 2010. In Spring 2011, after several months of living with Sam, Joan and Nancy approached their father to discuss

---

[2] At the time of these events, the Division of Child Protection and Permanency was named the Division of Youth and Family Services. L. 2012, c. 16. For ease of reference, we refer to the agency by its current name.

4

Garrison and the assaults he had committed on Joan. The girls disclosed the abuse gradually, at the urging of Nancy.

Sam reported the abuse during a court appearance to settle child support issues in May 2011, after which the police took statements from Sam, Joan, and Nancy. The police then asked defendant to come to the Monroe Township Police Department, which he did voluntarily. There, he denied the sexual assaults but admitted that he had played strip poker with the girls while they were in Alabama.

B.

In November 2011, a Gloucester County grand jury indicted defendant on four counts of first-degree aggravated sexual assault of a victim less than thirteen, contrary to N.J.S.A. 2C:14-2(a)(1); two counts of second-degree sexual assault of a victim less than thirteen, with the actor at least four years older than the victim, contrary to N.J.S.A. 2C:14-2(b); four counts of second-degree sexual assault by force or coercion, contrary to N.J.S.A. 2C:14-2(c)(1); and one count of third-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4(a).

Prior to trial, defendant moved to exclude evidence of the events in Alabama, including the strip poker game, as inadmissible other-crimes evidence. In denying defendant's motion, the trial court concluded that evidence of what occurred

5

in Alabama was admissible not as other-crimes evidence subject to N.J.R.E. 404(b), but as intrinsic evidence of the charged crimes under Rose, supra, 206 N.J. at 141. The trial court found that the "strong probative value" of the evidence outweighed its prejudicial effect because it was "part of the entire story."

The court provided the following instruction to the jury at the time this evidence was introduced:

> You are to consider this evidence, along with all other evidence, in determining whether the [d]efendant is guilty or not guilty of the charges stated in the Indictment.
>
> That is, you are to determine what weight, if any, this evidence should be given, using the instructions I will give you when this matter is concluded.
>
> You're not to speculate as to whether this conduct resulted in any charges in Alabama. That has no relevance to this proceeding. It is not to enter into your consideration in any manner, at any time.
>
> As stated previously, this evidence is to be used only with regard to the charges that have been indicted here in New Jersey and are before you.

The court also provided a limiting instruction in its final charge to the jury:

> You have heard evidence that Carl Garrison has previously been convicted of crimes. This evidence may only be used in determining the credibility or believability of the [d]efendant's testimony.

6

You may not conclude that the defendant committed the crime charged in this case, or is more likely to have committed the crime charged, simply because he committed a crime on another occasion.

. . .

You are not, however, obligated to change your opinion as to the credibility of the defendant simply because of his prior convictions. You may consider such evidence, along with all the other factors we previously discussed, in determining the credibility of the defendant.

At trial, defendant argued that Joan had pursued him. Defendant testified that Joan would grab him and try to "nuzzle [his] face into her breasts"; that she would run around the house naked and "put her ass in [his] face"; that Joan touched his penis while he was sleeping on a chair; and that, on one occasion, Joan gave him a condom. In his videotaped statement from the police department, which was played at trial, defendant told the detectives, "[t]he girl walked over and handed me a condom, she is definitely the aggressor."

Defendant also told detectives in the taped interrogation that Joan made passes at him and that "she was like, she was in love with me." He denied touching Joan's vagina, and, when asked by a detective why Joan would say that if it was not true, defendant replied, "[m]aybe it was wishful thinking." Defendant also stated that Joan told him that she had "busted her cherry playing with herself" and that "she's that type of girl."

7

Defendant testified that he rejected Joan's advances and told her "there's no way I could have a relationship with you. It's against the law.  You have to find somebody your age." Harriet similarly testified that Joan had "com[e] on to" and "had a crush on" defendant, whom Joan "thought somehow . . . was her boyfriend," which was "why she gave the condom."

During the trial, the State presented an expert witness, Dr. Mary Theresa Baker, who testified with regard to the physical characteristics child-abuse victims may exhibit.  Dr. Baker examined Joan and found no evidence of physical abuse.  As part of her testimony, Dr. Baker stated that "[o]verall, 95 to 96 percent of children, who give a credible disclosure of sexual contact, have a normal or non-specific exam."

The jury subsequently convicted defendant on three counts of first-degree aggravated sexual assault, three counts of second-degree sexual assault, and one count of third-degree endangering the welfare of a child.  Defendant received an aggregate sentence of fifty-two years in prison, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

Defendant appealed, arguing that evidence of the strip poker game was improperly admitted.  Although not raised below, defendant also contended that the admission of Dr. Baker's statistics-based testimony was error.  In an unreported opinion,

8

the Appellate Division reversed defendant's convictions.  The panel rejected the State's contention that evidence of the strip poker game was intrinsic to the crimes charged and determined that this evidence should have been evaluated under N.J.R.E. 404(b).  The Appellate Division then concluded that the strip poker evidence failed to pass muster under the analytical framework of Rule 404(b) and that its admission was not harmless error.  Additionally, in a footnote, the panel agreed that Dr. Baker's testimony amounted to an improper opinion of Joan's credibility and constituted plain error.

The Court granted the State's petition for certification. 223 N.J. 558 (2015).

## II.

Stressing that "evidence that is intrinsic to a charged crime need only satisfy the evidence rules relating to relevancy," Rose, supra, 206 N.J. at 177, the State contends that evidence of the strip poker game is admissible as intrinsic to the charged offenses.  The State maintains that the strip poker game satisfies the definition of intrinsic evidence adopted in Rose, supra, 206 N.J. at 180, because it is direct evidence of defendant's sexual relationship with Joan and because the game occurred contemporaneously with, and facilitated the commission of, the charged crimes.  Considering the strip poker game intrinsic evidence, the State asserts

9

that it is admissible because its probative value is not substantially outweighed by its prejudicial effect.

The State also argues that, even if the strip poker game is not intrinsic evidence, it is admissible under Rule 404(b). The State claims that the strip poker game with the girls was relevant to whether defendant acted for the purpose of sexual arousal. That evidence, in the State's view, supported an inference that defendant was aroused by young girls, which, in turn, was relevant to whether he had the motive and intent to commit the charged offenses.

As for the limiting instruction that is required when evidence is admitted under Rule 404(b), the State emphasizes that the trial court instructed the jurors that they were not to speculate whether defendant was charged with any offenses in Alabama and that the court gave a limiting instruction concerning evidence of defendant's other criminal conduct in its final charge. When the two instructions are taken together, the State contends, the essential point of a Rule 404(b) instruction -- that other-crimes evidence cannot be used to show a defendant's propensity to commit the charged offense -- was conveyed to the jury.

Conversely, defendant argues that, under the definition set out in Rose, the strip poker game is not intrinsic to the charged offenses. In addition, defendant avers that the strip

10

poker evidence is not admissible under Rule 404(b) in light of State v. J.M., 225 N.J. 146, 160 (2016), in which this Court held that a witness's testimony regarding a prior bad act was "inadmissible to establish motive, intent, or absence of mistake because [the] defendant's state of mind [was] not a 'genuinely contested' issue" when the defendant maintained that no sexual assault occurred. Defendant argues that his state of mind is not genuinely contested because he too has maintained that no sexual assault occurred.

Turning to the limiting instruction, defendant asserts that it was "completely inadequate" because it did nothing more than tell the jury to consider the evidence "in determining whether [d]efendant is guilty or not guilty of the charges stated in the indictment." Moreover, defendant contends that the trial court's limiting instruction in its final charge was inadequate because it was limited to his prior convictions and did not reference the strip poker game or any acts for which no criminal conviction had been obtained.

Lastly, defendant urges this Court to uphold the Appellate Division's reversal of his convictions based on the alleged improper testimony of the State's expert witness, Dr. Baker. Defendant highlights Dr. Baker's statement that "[o]verall, 95 to 96 percent of children, who give a credible disclosure of sexual contact, have a normal or non-specific exam." He claims

11

this remark "went beyond the bounds of permissible expert testimony" in that it inappropriately bolstered Joan's credibility.

III.

Under N.J.R.E. 404(b), uncharged extrinsic bad acts may not be introduced to demonstrate a defendant's criminal disposition as a basis for proving guilt of the crimes charged. Rule 404(b) provides that

> evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

One of the well-recognized dangers inherent in the admission of so-called "other-crimes evidence" is that a jury may convict a defendant not for the offense charged, but for the extrinsic offense. State v. Skinner, 218 N.J. 496, 514 (2014). Courts therefore "cautiously examine any evidence that is in the nature of prior bad acts, wrongs, or, worse, crimes by a defendant" because such evidence has a tendency to prejudice a jury. Ibid. "Put simply, a defendant must be convicted on the basis of his acts in connection with the offense for which he is charged. A defendant may not be convicted simply because the jury believes that he is a bad person." Ibid.

12

In order to minimize the dangers presented by other-crimes evidence, this Court has insisted that evidence proffered under Rule 404(b) "must pass [a] rigorous test." State v. Kemp, 195 N.J. 136, 159 (2008). In State v. Cofield we adopted the following four-part test for analyzing the admissibility of other-crimes evidence:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [127 N.J. 328, 338 (1992).]

Against this evidentiary backdrop, we turn to the parties' dispute over whether the evidence of the strip poker game satisfies this analytical framework. Because the trial court never performed that analysis, our review is de novo. Rose, supra, 206 N.J. at 158 (citing State v. Lykes, 192 N.J. 519, 534 (2007)).

A.

1.

To satisfy the first prong of the Cofield test, the "proffered evidence must be 'relevant to a material issue genuinely in dispute.'" State v. Gillispie, 208 N.J. 59, 86

13

(2011) (quoting State v. Darby, 174 N.J. 509, 519 (2002)). Evidence is relevant if it tends "to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. The main focus "in determining the relevance of evidence is whether there is a logical connection between the proffered evidence and a fact in issue." J.M., supra, 225 N.J. at 160 (quoting State v. Willis, 225 N.J. 85, 98 (2016)). The burden of establishing this connection is not onerous: "if the evidence makes a desired inference more probable than it would be if the evidence were not admitted, then the required logical connection has been satisfied." State v. Williams, 190 N.J. 114, 123 (2007) (describing standard for connection as "generous"). "Moreover, the material fact sought to be proved must be one that is actually in dispute[.]" J.M., supra, 225 N.J. at 160 (alteration in original) (quoting Willis, supra, 225 N.J. at 98).

In this case, defendant repeatedly denied wrongdoing, and insisted that any inappropriate actions originated with Joan. For example, defendant testified that Joan would grab him and try to pull his face to her chest and that she touched his penis while he was sleeping on a chair. Defendant told detectives in his videotaped statement that was played at trial, "[t]he girl walked over and handed me a condom, she is definitely the aggressor."

14

Indeed, defendant repeatedly portrayed Joan as "the aggressor" at trial. He testified that Joan was "big and strong" and "not no, tiny petite thing." Likewise, he told detectives in his videotaped interrogation that Joan made passes at him and that "she was like, she was in love with me." Harriet also testified to that effect when she stated that Joan "thought somehow [defendant] was her boyfriend" and that "she had a crush on him." From this testimony and defendant's statements to detectives in his videotaped interrogation, it is apparent that a linchpin of the defense's theory of the case was that any inappropriate actions originated with Joan.

Contrary to defendant's arguments, the strip poker game has direct relevance "to a material issue in dispute." Gillispie, supra, 208 N.J. at 86. The testimonial evidence of the strip poker game is relevant because it tends "to prove or disprove" whether any inappropriate action originated with Joan. N.J.R.E. 401. Multiple witnesses testified about whose idea it was to play the game. Joan testified that she was playing with her sister when defendant approached them and told them about strip poker and the rules of the game. Nancy also testified that defendant initiated the game. Conversely, defendant testified that he and the girls played strip poker at Joan's suggestion. Because the testimonial evidence of the strip poker game sheds light on whose idea it was to play the game, it is highly

15

relevant to the issue that any inappropriate actions originated with Joan, an issue defendant himself raised in this case.  Put simply, Joan and Nancy's testimony that defendant initiated the strip poker game enables the jury to better weigh defendant's assertion that any inappropriate actions originated with Joan.

Although defendant relies on J.M., that case is inapposite.  In J.M., supra, we held that a witness's testimony regarding a prior bad act was "inadmissible to establish motive, intent, or absence of mistake because [the] defendant's state of mind [was] not a 'genuinely contested' issue" where [the] defendant maintained that no sexual assault occurred.  225 N.J. at 160.  Unlike the defendant in J.M., defendant in this case has not merely denied that a sexual assault took place.  Defendant has repeatedly asserted that any inappropriate actions originated with the victim.  Defendant's reliance on J.M. is therefore unavailing as the circumstances of that case are readily distinguishable.

Moreover, the strip poker game is admissible against defendant under Rule 404(b) as evidence of his plan to further desensitize Joan to sexual conduct so that he could continue to abuse her.  See, e.g., State v. DeVincentis, 47 P.3d 606, 610 (Wash. Ct. App. 2002) ("One reason the common scheme or plan exception arises in prosecutions alleging sexual abuse of children is that such crimes often occur only after the

16

perpetrator has successfully used techniques designed to obtain the child's cooperation."), aff'd, 74 P.3d 119 (Wash. 2003).

2.

The second prong of the Cofield test requires that the other-crimes evidence "be similar in kind and reasonably close in time to the [alleged crime]." Skinner, supra, 218 N.J. at 515 (quoting Cofield, supra, 127 N.J. at 338). Defendant is hard-pressed to contest the close temporal relationship between the strip poker game and the sexual assaults with which he was charged in New Jersey. The game took place in July 2010, between the June and August sexual assaults. The strip poker evidence therefore satisfies the second prong of the Cofield test.

3.

Under the third prong of the Cofield framework, evidence of the other crime must be clear and convincing. It is undisputed that defendant played strip poker with Joan and Nancy. Defendant acknowledged having played strip poker with the girls in both the videotaped statement he provided to detectives and in his testimony at trial. Harriet, Joan, and Nancy also stated that the strip poker game occurred. We need not belabor this point. Although the precise details of the incident, including which articles of clothing were removed and who initiated the game, were subject to dispute, the evidence that defendant

17

played strip poker with the girls was beyond "clear and convincing." Cofield, supra, 127 N.J. at 338.

4.

Finally, we consider whether the strip poker evidence meets the fourth prong of the Cofield test -- whether the probative value of the evidence is outweighed by its apparent prejudice -- "generally the most difficult part of the test." State v. Barden, 195 N.J. 375, 389 (2008). Some types of evidence, however, "require a very strong showing of prejudice to justify exclusion. One example is evidence of motive or intent." Skinner, supra, 218 N.J. at 516 (quoting State v. Covell, 157 N.J. 554, 570 (1999)). Furthermore, despite this Court's imposition of a stringent standard for the admission of other-crimes evidence, "our courts have not frequently excluded highly prejudicial evidence under the fourth prong of Cofield." State v. Long, 173 N.J. 138, 162 (2002).

Here, the probative value of the Alabama evidence and the strip poker game is high because it provided the jury with evidence of a continuous course of conduct concerning defendant's abuse of Joan throughout the summer. The abuse began after Joan finished school in mid to late June and continued until early September. To remove the period in July when defendant abused Joan in Alabama from a time span of about two and a half months would leave a significant gap in the time

18

period of continuous conduct; see United States v. Gibson, 170 F.3d 673, 681 (7th Cir. 1999) (stating other-crimes evidence may be necessary to avoid "a chronological or conceptual void in the story of the crime" (quoting United States v. Ramirez, 45 F.3d 1096, 1102 (7th Cir. 1995))). In addition, the Alabama evidence and the strip poker game are probative in that they enabled Joan to provide a coherent explanation of defendant's continuous conduct, depicting her perception of what occurred because "[y]oung children often 'do not think in terms of dates or time spans.'" State v. L.P., 338 N.J. Super. 227, 239 (App. Div.), certif. denied, 170 N.J. 205 (2001) (quoting In re K.A.W., 104 N.J. 112, 118 (1986)).

Moreover, evidence of the strip poker game was not so prejudicial that it had "'a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation' of the issues in the case." Long, supra, 173 N.J. at 163-64 (quoting State v. Koskovich, 168 N.J. 448, 486 (2001)). In this case, the strip poker game was just one of many incidents the jury heard about. The jury also heard detailed testimony regarding Joan's performance of oral sex on defendant and how he digitally penetrated her anus. In addition, the jurors listened to Joan's testimony on how she had sex with defendant in her mother's trailer in New Jersey, at defendant's mother's house in New Jersey, and in Alabama. Moreover, they heard how Nancy, who

19

was nine years old at the time, saw Joan washing defendant's penis with a washcloth.  In the context of the record as a whole, it is unlikely the strip poker evidence had "a probable capacity to divert the minds of the jurors" when far more prejudicial evidence was presented.

Defendant contends that the testimonial evidence of the strip poker game had the capacity to divert the minds of the jurors.  He asserts that the State's proof of the sexual assaults hinged on testimony from Joan and, thus, evidence of the strip poker game could have tipped the scales on whether the jury found defendant or Joan more credible as to whether the assaults occurred.

That argument is unpersuasive because the testimony regarding the strip poker game also required the jury to make credibility determinations.  For example, the girls' mother Harriet testified that she witnessed the game, but Joan and Nancy testified that their mother was not present. Additionally, defendant testified that Joan initiated the game, but the girls testified that defendant was the one who suggested they play.  Because the strip poker evidence also required the jury to make credibility determinations, defendant's argument that the game could have influenced the credibility determination that was central to whether the assaults occurred is unconvincing.

20

Defendant also posits that the strip poker evidence "permeated the trial" because it was addressed on direct and cross-examination during the testimony of witnesses for the State and defense.  True, the strip poker incident was brought up several times over the course of the trial, but other pieces of evidence that had far greater potential effect were also raised multiple times.  For instance, both Joan and Nancy testified regarding the incident in which Joan allegedly washed defendant's penis.  The strip poker evidence was only one of many incriminating pieces of evidence.  Because far more damaging evidence was presented at trial, it is unlikely that the strip poker evidence had "a probable capacity to divert the minds of the jurors."  Long, supra, 173 N.J. at 163-64.

In sum, we conclude that evidence of the strip poker game satisfies each of the four prongs of the Cofield test and was therefore admissible.  We thus consider whether its admission was accompanied by a sufficient limiting instruction.

B.

In order to reduce "the inherent prejudice in the admission of other-crimes evidence, our courts require the trial court to sanitize the evidence when appropriate."  Rose, supra, 206 N.J. at 161 (quoting Barden, supra, 195 N.J. at 390).  Thus, when other-crimes evidence is deemed admissible under the Cofield rubric, the court must provide a limiting instruction that

21

"inform[s] the jury of the purposes for which it may, and for which it may not, consider the evidence of defendant's uncharged misconduct, both when the evidence is first presented and again as part of the final jury charge." Ibid. (quoting Barden, supra, 195 N.J. at 390). The limiting instruction is designed to explain to the jury the "fine distinction to which it is required to adhere." Ibid. (quoting Barden, supra, 195 N.J. at 390).

In the instant case, immediately after Joan testified, the court reminded the jury that "[t]he conduct . . . that is alleged to have occurred in Alabama is that the [d]efendant played strip poker with [Joan] and [Nancy] and engaged in sexual conduct with [Joan]." The court then instructed the jury that this evidence was to be "used only with regard to the charges that have been indicted in New Jersey" and that they were "not to speculate as to whether this conduct resulted in any charges in Alabama."

In its final charge, the court also provided a limiting instruction to the jury. Although that instruction did not specifically address the strip poker game or the sexual assaults in Alabama, the court instructed the jury that it was not to use the testimony it heard about defendant's other criminal conduct for propensity purposes. The court thus cautioned the jury

22

against considering other-crimes evidence to prove defendant's disposition to commit the offenses with which he was charged.

Defendant contends that the trial court's limiting instruction in its final charge "was completely inadequate" because it was limited to his prior convictions and did not reference the strip poker game or any acts for which no criminal conviction had been obtained.  We must, however, view the charge as a whole.  State v. Baum, 224 N.J. 147, 159-60 (2016).  "The Court must not look at portions of the charge alleged to be erroneous in isolation . . . ."  State v. McKinney, 223 N.J. 475, 494 (2015).

When viewed as a whole, in light of the evidence and the court's instructions, it cannot be said that the challenged instruction is "of such a nature as to have been clearly capable of producing an unjust result."  R. 2:10-2; see State v. Galicia, 210 N.J. 364, 388 (2012) ("For an error to require reversal, there must be 'some degree of possibility that [the error] led to an unjust result.  The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict that it otherwise might not have reached.'"  (quoting State v. Lazo, 209 N.J. 9, 26 (2012) (alterations in original))).  We are satisfied that the essential principle -- that the jury could not use the strip poker game for propensity purposes -- was adequately

23

communicated to the jury even if the trial court in its final charge did not refer specifically to the Alabama evidence. We therefore conclude that the 404(b) evidence was properly admitted with an appropriate limiting instruction.

Because we conclude that evidence of the strip poker game is admissible under the rigorous standard of Rule 404(b), we need not address the State's arguments regarding intrinsic evidence. See Rose, supra, 206 N.J. at 178 ("It is therefore more likely that evidence of uncharged misconduct will be admitted into evidence if it is considered intrinsic to the charged crime and subject only to Rule 403 than if it is not considered intrinsic evidence and subject to both Rule 404(b) and Rule 403.").

IV.

Defendant also urges this Court to affirm the Appellate Division's determination that the improper testimony of the State's expert witness, Dr. Baker, warranted reversal of his convictions. Defendant highlights Dr. Baker's statement that "[o]verall, 95 to 96 percent of children, who give a credible disclosure of sexual contact, have a normal or non-specific exam."

We agree that this aspect of Dr. Baker's testimony is troubling. In State v. W.B., we explained that expert testimony concerning the statistical credibility of victim-witnesses

24

"deprives the jury of its right and duty to decide the question of credibility of the victim based on evidence relating to the particular victim and the particular facts of the case." 205 N.J. 588, 614 (2011). Consequently, we find Dr. Baker's comment regarding the percentage of children who have non-specific exams problematic.

But this error does not mandate reversal. See ibid. ("Convictions after a fair trial, based on strong evidence proving guilt beyond a reasonable doubt, should not be reversed because of a technical or evidentiary error that cannot have truly prejudiced the defendant or affected the end result."). Defendant did not object or raise this issue during trial, so we evaluate his arguments under a plain-error standard of review. R. 2:10-2. Under this standard, a conviction will stand and "the error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." State v. R.K., 220 N.J. 444, 456 (2015).

The purpose of Dr. Baker's testimony was to explain to the jury the physical characteristics child abuse victims may exhibit and that the absence of physical injuries is not an indication that abuse did not occur. Dr. Baker testified that physical injuries generally heal quickly for girls who have reached a certain point in their development. It is in this

25

context that Dr. Baker commented about the percentage of credible disclosures. In addition, Dr. Baker explicitly stated that she could not reach a conclusion either way as to whether Joan was abused.

In W.B., supra, the defendant objected to an expert's estimate regarding the percentage of children that lie about sexual abuse. 205 N.J. at 612. This Court deemed the testimony harmless, relying on the expert's assertions that he never evaluated the witness and the strength of the trial court's jury charge. Id. at 615. Here, Dr. Baker made clear that she only physically examined Joan and that she never interviewed Joan or "ask[ed] questions about the allegations." The trial court also provided an appropriate limiting instruction on the use of expert testimony. After careful consideration, we do not believe that Dr. Baker's stray remark, to which defendant did not object at trial, enabled the jury to reach "a result that it otherwise might not have reached." R.K., supra, 220 N.J. at 456. We therefore find this comment to be harmless error that does not warrant a reversal of defendant's conviction.

V.

Evidence of the strip poker game meets the Cofield test and was therefore properly admitted at trial. The remark by Dr. Baker is harmless error. We therefore reverse the judgment of the Appellate Division and reinstate defendant's convictions.

26

The matter is remanded to the Appellate Division for consideration of the issue not addressed by that court concerning defendant's sentence.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and TIMPONE join in JUSTICE FERNANDEZ-VINA's opinion.

27