**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0481-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HOWARD L. DUNNS, a/k/a HOWARD
LAMONT DUNNS, CLARENCE DUNNS,
MICHAEL HOARN, ROBERT JONESY,
LAMONT NEWPORT and ROBERT JONES,

    Defendant-Appellant.

_____

        Submitted September 25, 2017 – Decided June 29, 2018

        Before Judges Accurso and Vernoia.

        On appeal from Superior Court of New Jersey,
        Law Division, Atlantic County, Indictment No.
        13-09-2433.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Robert C. Pierce, Designated
        Counsel, on the brief).

        Damon G. Tyner, Atlantic County Prosecutor,
        attorney for appellant (John J. Lafferty, IV,
        Assistant Prosecutor, of counsel and on the
        brief).

PER CURIAM

Defendant Howard L. Dunns appeals his conviction and sentence for two counts of burglary and one count of kidnapping. Defendant entered conditional pleas of guilty to the offenses, reserving his right to challenge the court's denial of his motion to sever four charges related to a robbery and kidnapping from the remaining thirty charges in the indictment concerning eight separate residential burglaries. We reverse the court's order denying defendant's severance motion, vacate defendant's conviction and sentence, and remand for further proceedings consistent with this opinion.

## I.

Defendant and his codefendant Fred D. Mosley were charged in an indictment with thirty-four offenses arising out of eight residential burglaries and a robbery and kidnapping occurring in Atlantic County between November 20, 2012, and February 1, 2013. The thirty-fifth count of the indictment charged co-defendant Nicole Cumens with third-degree conspiracy to commit burglary and theft, N.J.S.A. 2C:5-2, N.J.S.A. 2C:18-1 and N.J.S.A. 2C:20-3.

Thirty counts of the indictment charged defendant and Mosley with offenses arising from eight residential burglaries, including eight counts of third-degree burglary, N.J.S.A. 2C:18-2, one count of fourth-degree theft, N.J.S.A. 2C:20-3, five counts of third-degree theft, N.J.S.A. 2C:20-3, eight counts of fourth-degree

criminal mischief, N.J.S.A. 2C:17-3(a)(1), and eight counts of third-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:18-2.

Four counts of the indictment alleged offenses arising out of a January 25, 2013 kidnapping and robbery at A.B.'s[1] residence: first-degree kidnapping, N.J.S.A. 2C:13-1(b) (count twenty-one); second-degree robbery, N.J.S.A. 2C:15-1 (count twenty-two); fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1) (count twenty-three); and second-degree conspiracy to commit kidnapping and robbery, N.J.S.A. 2C:5-2, N.J.S.A. 2C:13-1(b) and N.J.S.A. 2C:15-1 (count twenty-four). Defendants were not charged with burglary, N.J.S.A. 2C:18-2(a), in connection with the incident at A.B.'s residence.

Defendant moved to sever counts twenty-one through twenty-four from the thirty burglary-related charges. The State opposed the motion and moved to join unindicted burglary and theft charges that were pending against defendant and Mosley in Gloucester County with the charges in the indictment or, in the alternative, to permit the State to introduce evidence at trial concerning the Gloucester County charges under N.J.R.E. 404(b).

---

[1] We use the victim's initials to protect her privacy.

The evidence before the motion court consisted of the grand jury testimony of New Jersey State Police Detective John Hannigan explaining the investigation, and generally describing the burglaries and the robbery and kidnapping. Hannigan testified that on November 20, 2012, a residential burglary occurred in Buena Vista. The perpetrator(s) broke through a rear door of the residence and stole jewelry from the unoccupied home.

On November 21, 2012, another Buena Vista residence was burglarized. A neighbor saw a grey Chevrolet Suburban pull into the driveway and two men walk up a handicap ramp to the house. The perpetrators broke through the rear door of the residence and stole jewelry.

On January 8 and 9, 2013, burglaries involving broken rear doors and the theft of valuables occurred at separate Buena Vista residences. On January 19, 2013, a burglary occurred when a cinder block was thrown through a rear window and valuables were stolen from another Buena Vista residence.

On January 25, 2013, eighty-five-year-old A.B. awoke to noise in the family room of her Buena Vista residence. She confronted two men, who bound her hands and feet with a telephone cord and asked her for money. The perpetrators went through the home, stole jewelry and fled the scene, leaving the bound A.B. behind. A.B. was found four hours later by her son. The rear exterior

door had been kicked in and the police recovered from the door what they suspected was a footprint from one of the perpetrators.

On January 29 or 30, 2013, a residence in Franklin Township in Gloucester County was burglarized. A neighbor unsuccessfully attempted to block a gold Volkswagen Jetta from leaving the scene. The neighbor gave the vehicle's license plate number to the police. The Volkswagen Jetta was leased from a Delaware car leasing store to Mosley's girlfriend, co-defendant Nicole Cumens. The police determined the grey Chevy Suburban identified by witnesses to the November 21, 2012 burglary was owned by Cumens.

On February 1, 2013, the New Jersey State Police surveilled Cumens's Delaware residence and the car leasing store. They were advised three new burglaries involving kicked-in rear doors were reported in Buena Vista that day.

A gold Volkswagen bearing the same license plate seen at the January 29, 2013 burglary arrived at Cumens's residence. Mosley exited the vehicle and entered Cumens's home. Detectives later arrested Mosley when he exited the home.

The police later learned a fourth residential burglary took place on February 1, 2013, in Gloucester County. A surveillance recording showed defendant and Mosley inside and outside of the residence during the burglary. Defendant and Mosley were charged with the burglary in Gloucester County.

When Mosley was arrested, the police recovered a phone from his pocket and two phones from his vehicle. The phones were unregistered "burner phones." Analysis of one of the phones showed it was used to make phone calls to the residences immediately prior to the burglaries and the kidnapping and robbery between January 19, 2013 and February 1, 2013. Data showed the phone was used to make numerous calls to the residences on the days the crimes charged in the indictment were committed.

Data retrieved from the phone found in Mosley's pocket showed it was used to make multiple calls to the homes burglarized on November 20 and 21, 2012, just prior to the burglaries. Other data showed multiple phone calls were made to the homes burglarized between December 26, 2012 and January 19, 2013, just prior to the burglaries.

In Mosley's vehicle, the police found ski masks, multiple pairs of shoes, black gloves, Western Union receipts and the homeowner's belongings from one of the February 1, 2013 burglaries. A shoe recovered from the vehicle matched the shoe print found on the rear door of A.B.'s home. During the investigation, evidence recovered from a Philadelphia pawn shop showed defendant and Mosley pawned jewelry stolen during the November 2012 burglaries.

Months after his arrest, Mosley gave a statement describing the commission of the crimes. He explained that he and defendant

obtained "burner phones" which they first used to obtain the phone numbers of the residences, including A.B.'s home. They called the residences multiple times to determine if anyone was home. If their calls were unanswered, they kicked in the rear doors, and burglarized the homes to steal valuables, primarily targeting jewelry.

Mosley explained he drove the Volkswagen Jetta on January 25, 2013 when A.B. was robbed and kidnapped. According to Mosley, he, defendant and a person he identified as T.T.[2] drove by A.B.'s house, made phone calls to the home and received no answer. Mosley said defendant and T.T. went to the rear of the residence, kicked in the back door, went inside and made contact with the homeowner.[3] Mosley said defendant and T.T. tied up A.B. and took her belongings.

When defendant was arrested, he was in possession of a cell phone. Hannigan generally described that the data from defendant's

---

[2] We use initials to protect the privacy of anyone sharing the name of the individual Mosley said committed the crimes. The individual named was never arrested or charged, and there is no other evidence in the record showing the person Mosley named committed any of the offenses.

[3] Mosley's statement contradicted the physical evidence recovered at the scene. The shoe print recovered from the rear door matched the tread pattern of a sneaker from Mosley's car, and Mosley admitted the sneaker was his.

phone showed text messages between him and Mosley on the dates of, or just prior to, the January 2013 offenses. In the messages, defendant and Mosley communicated about when they intended to meet and whether the other wanted to "work" on particular days.

The judge denied the State's motion for joinder of the unindicted Gloucester County charges with the Atlantic County indictment because defendant had not been indicted on the Gloucester County charges. The judge further determined that subject to holding a N.J.R.E. 104 hearing, evidence concerning the Gloucester County burglaries was admissible under N.J.R.E. 404(b) in the trial of the charges in the indictment.

The court denied defendant's motion to sever counts twenty-one through twenty-four, which charged offenses arising out of the robbery and kidnapping of A.B. Relying solely on Hannigan's grand jury testimony, the court determined the evidence showed the robbery and kidnapping were committed in a manner so similar to the commission of the residential burglaries that it established defendant's identity as a perpetrator. The court concluded that evidence concerning the robbery and kidnapping was otherwise admissible under N.J.R.E. 404(b) to prove defendant's identity as a perpetrator of the burglaries and, as a result, severance of the four counts was not required.

Seven months later, Mosley pleaded guilty to two counts of burglary and one count of kidnapping pursuant to a plea agreement. Mosley agreed to testify against defendant.

Defendant subsequently pleaded guilty to three counts of burglary and one count of kidnapping. The State agreed to recommend a sentence not to exceed nineteen years subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.1. Defendant's plea was conditioned on his right to appeal the denial of his severance motion.

Defendant was sentenced to an aggregate nineteen-year custodial term, and ordered to pay $30,803.45 in restitution at the rate of $100 per month following his release. This appeal followed.

On appeal, defendant makes the following arguments:

POINT I

THE TRIAL COURT ERRED BY DENYING [DEFENDANT'S] MOTION TO SEVER THE KIDNAPPING AND RELATED CHARGES CONTAINED IN COUNTS 21-24 OF THE INDICTMENT FROM THE REMAINING 21 COUNTS THAT DEALT WITH SEVEN OTHER BURGLARIES.[4]

POINT II

THE SENTENCE IMPOSED UPON [DEFENDANT] IS UNLAWFUL BECAUSE THE TRIAL COURT IMPROPERLY ORDERED THE REPAYMENT OF RESTITUTION AND

---

[4] As noted, the indictment actually includes thirty charges related to the eight burglaries, and four charges arising from the robbery and kidnapping at A.B.'s residence.

INCLUDED A STATEMENT IN THE JUDGMENT OF CONVICTION THAT THE TRIAL COURT "DOES NOT CONSENT TO A REDUCTION OF THE PRIMARY PAROLE ELIGIBILITY DATE PURSUANT TO N.J.S.A. 30:4-123.67."

## II.

We first address defendant's contention that the court erred by denying his motion to sever counts twenty-one through twenty-four from the remaining counts, which allege offenses arising out of the eight residential burglaries. Defendant argues the evidence before the motion court did not establish the commission of "signature crimes" and therefore the court erred by finding evidence showing the commission of the robbery and kidnapping was admissible under N.J.R.E. 404(b) to prove defendant's identity as a perpetrator of the other offenses charged in the indictment. The State contends severance was not required because evidence showing defendant committed the robbery and kidnapping was otherwise admissible to prove defendant's identity as a perpetrator of the thirty other offenses charged in the indictment.

Where multiple criminal charges in an indictment are "based on the same conduct or aris[e] from the same episode," mandatory joinder of the charges is required. R. 3:15-1(b). Relief from mandatory joinder of charges may be granted in the trial court's discretion "if a party is prejudiced by their joinder." State v. Oliver, 133 N.J. 141, 150 (1993).

10

A-0481-15T1

In our review of a trial court's decision permitting two or more offenses to be tried simultaneously, we "assess whether prejudice is present, and [the court's] judgment is reviewed for an abuse of discretion." State v. Sterling, 215 N.J. 65, 73 (2013); accord State v. Chenique-Puey, 145 N.J. 334, 341 (1996). "The test for assessing prejudice is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges.'" Ibid. (alteration in original) (quoting Chenique-Puey, 145 N.J. at 341).

Here, defendant's severance motion required that the court determine whether evidence concerning the robbery and kidnapping related charges was admissible under N.J.R.E. 404(b) in the trial of the indictment's thirty other charges. See Sterling, 215 N.J. at 73. It is "[t]he admissibility of the evidence in both trials that renders inconsequential the need for severance." State v. Davis, 390 N.J. Super. 573, 591 (App. Div. 2007) (citation omitted).

Because of the dangers that admission of other crimes evidence presents, "evidence proffered under Rule 404(b) 'must pass [a] rigorous test.'" State v. Garrison, 228 N.J. 182, 194 (2017) (quoting State v. Kemp, 195 N.J. 136, 159 (2008)). In State v. Cofield, 127 N.J. 328, 338 (1992), our Supreme Court established

a four-part test for determining the admissibility of other-crime
evidence:

> 1. The evidence of the other crime must be
> admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably
> close in time to the offense charged;
>
> 3. The evidence of the other crime must be
> clear and convincing; and
>
> 4. The probative value of the evidence must
> not be outweighed by its apparent prejudice.
>
> [Ibid. (quoting Cofield, 127 N.J. at 338).]

Where, as here, the court did not analyze the evidence under the

Cofield test, we review de novo the determination that evidence

is admissible under N.J.R.E. 404(b).  Garrison, 228 N.J. at 194;

accord State v. Darby, 174 N.J. 509, 518 (2002).

In making its determination under N.J.R.E. 404(b), the court

relied on Hannigan's grand jury testimony concerning the robbery

and kidnapping and the other crimes charged in the indictment.

The court found the evidence was admissible under N.J.R.E. 404(b)

to prove defendant's identity as a perpetrator of the thirty

burglary-related offenses.  We therefore consider whether the

evidence was admissible under the Cofield test to prove defendant's

identity as a perpetrator of the thirty burglary-related charges

in the indictment.  See Sterling, 215 N.J. at 73.

Under the first prong, evidence is relevant if it makes an inference more probable and is related to a material issue in dispute.  State v. Rose, 206 N.J. 141, 160 (2011).  Here, defendant's identity as a perpetrator of the offenses charged in the indictment was a material issue.  State v. Henderson, 433 N.J. Super 94, 108 (App. Div. 2013) (noting the state "bears the burden of proving identity").

The State argues, and the court appeared to find, the evidence concerning the robbery and kidnapping proved defendant's identity as a perpetrator of the burglary-related crimes because all of the crimes charged in the indictment were signature crimes.  There is a stringent standard for admitting other-crimes evidence to prove identity where, as here, "the State attempts to link a particular defendant to a crime on the basis of modus operandi, or a signature way of committing the crime."  Sterling, 215 N.J. at 93; see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 14 on N.J.R.E. 404(b) (2017).  A more stringent standard is required "[b]ecause of the great hazard of prejudice," when other crime evidence is presented, "particularly when the venture is to prove identity . . . ."  State v. Reldan, 185 N.J. Super. 494, 502 (App. Div. 1982).

To establish the commission of signature crimes, the evidence must show "the prior criminal activity with which defendant is

identified must be so nearly identical in method as to earmark the crime as defendant's handiwork." State v. Fortin, 162 N.J. 517, 532 (2000) (quoting Reldan, 185 N.J. Super. at 502). The conduct must be unusual and distinctive, like a signature, and there must be proof of sufficient facts in both crimes to establish an unusual pattern. Ibid.; see also State v. Inman, 140 N.J. Super. 510, 516 (App. Div. 1976) (finding admissibility of signature crime evidence is limited to where the crimes have "been committed by some novel or extraordinary means or in a peculiar or unusual manner").

Other-crime evidence, however, is inadmissible to establish identity where the crimes are not sufficiently similar. Sterling, 215 N.J. at 97. In Sterling, the Court determined that evidence showing the perpetrators of separate sexual assaults used a condom, made racial comments and cut the victims' underwear was not sufficiently "unique, or even unusual," to "rise to the level of signature elements of a crime." Id. at 97-98. Similarly, in Reldan, 185 N.J. Super. at 503, we determined that evidence showing the defendant committed prior offenses by trying to choke his victims was inadmissible as signature crime evidence to prove his identity as the perpetrator of two murders where the victims were strangled with a pantyhose ligature.

Here, the evidence showed the robbery and kidnapping and the burglary-related charges shared some common elements: the perpetrators called the home phone numbers before forcing entry through the rear doors, and then stole items. However, we find nothing in those common elements that is "unusual and distinctive so as to be like a signature," Sterling, 215 N.J. at 95. In addition, there were dissimilarities in the commission of the offenses. For example, the evidence showed the perpetrators did not use the same means to force open the rear doors in certain instances, and there was no evidence showing the method used to force the doors open in others.[5]

We are therefore not convinced the robbery and kidnapping and the burglaries charged in the indictment were committed in a unique, distinctive and identical manner sufficient to satisfy the "high burden that . . . [is] required when other-crimes evidence is admitted to prove identity through the use of signature crime analysis." Id. at 94-95. The evidence did not satisfy the heightened standard to establish the commission of signature crimes to prove defendant's identity. See id. at 97-98.

---

[5] The evidence showed that some of the doors were kicked in, one door was opened by throwing an object threw a window, and there was no evidence presented showing the method used to open the doors of some of the residences.

The only other evidence establishing defendant's identity as a perpetrator of the crimes charged in the indictment was Hannigan's grand jury testimony about Mosley's statements to the police. As noted, Mosley told the police he and defendant committed the burglaries, and he was with defendant when defendant and T.T. broke into A.B.'s home and committed the robbery and kidnapping. The statements attributed to Mosley support a finding of admissibility under the under the first prong of the Cofield test. It is "relevant to a material issue genuinely in dispute" - defendant's identity. State v. Gillispie, 208 N.J. 59, 86 (2011).

The second Cofield prong, requiring evidence concerning the robbery and kidnapping be "similar in kind and close in time to the" other offenses charged, is applicable where identity is at issue. State v. Carswell, 303 N.J. Super. 462, 470-71 (App. Div. 1997). However, "[t]emporality and similarity of conduct is not always applicable, and thus not required in all cases." Rose, 206 N.J. at 160; see also State v. Williams, 190 N.J. 114, 131 (2007) (finding the second prong's "usefulness as a requirement is limited to cases that replicate the circumstances in Cofield"). We do not find the second Cofield prong applicable here because, as noted, there is insufficient evidence showing a similarity in the commission of the robbery and kidnapping and the other offenses

A-0481-15T1

to establish defendant's identity as a perpetrator of the other offenses.

The third prong requires that the prosecution establish by "'clear and convincing' evidence" that the other crimes or acts occurred. Rose, 206 N.J. at 160 (quoting Cofield, 127 N.J. at 338). To satisfy this prong, the State was required to demonstrate by clear and convincing evidence defendant committed the robbery and kidnapping. Ibid. The trial court must ordinarily conduct a N.J.R.E. 104 hearing to "hear the specific content of the other-crime testimony[,] . . . assess its relevance to an issue in dispute and its necessity to the proof of that issue" and "determine whether it finds proof of the other crime to be clear and convincing." State v. Hernandez, 170 N.J. 106, 127 (2001).

Because the court did not hold a N.J.R.E. 104 hearing, the evidence showing defendant committed the robbery and kidnapping was limited to Hannigan's testimony about Mosley's statements to the police. Although the testimony of an uncorroborated accomplice may constitute clear and convincing evidence of a defendant's commission of another crime, id. at 125-26, hearsay does not support a finding the State proved a defendant's commission of another crime by clear and convincing evidence, State v. Sheppard, 437 N.J. Super. 171, 201 (App. Div. 2014). Moreover, Mosley's statements to the police do not constitute clear and convincing

evidence that defendant committed the robbery and kidnapping because the motion court did not assess the statements in a N.J.R.E. 104 hearing and the statements were unchallenged by cross-examination. See Hernandez, 170 N.J. at 127 (finding a N.J.R.E. 104 hearing to assess the testimony concerning defendant's commission of an other-crime was unnecessary because the court was presented with testimony concerning the commission of the crime in a separate proceeding where the witness was subject to "tough cross-examination"). Thus, the motion court lacked, and this court lacks, any evidentiary basis supporting a finding the State satisfied its burden under Cofield's third prong. See State v. Carlucci, 217 N.J. 129, 143 (2014) (finding police officer's testimony that defendant admitted prior crime was not clear and convincing evidence of the commission of the crime under Cofield).

Cofield's fourth prong "recognizes that the 'inflammatory characteristic of other-crime evidence . . . mandates a careful and pragmatic evaluation by trial courts, based on the specific context in which the evidence is offered, to determine whether the probative worth of the evidence outweighs its potential for undue prejudice.'" State v. Willis, 225 N.J. 85, 99 (2016) (alteration in original) (quoting State v. Stevens, 115 N.J. 302, 303 (1989)); accord Rose, 206 N.J. at 161.

"'[T]he potential for undue prejudice need only outweigh probative value to warrant exclusion' of other-crime evidence." Willis, 225 N.J. at 99-100 (quoting State v. Reddish, 181 N.J. 553, 608 (2004)). "[I]f other less prejudicial evidence may be presented to establish the same issue, the balance in the weighing process will tip in favor of exclusion." Rose, 206 N.J. at 161 (quoting State v. Barden, 195 N.J. 375, 392 (2008)). "Thus, courts have interpreted N.J.R.E. 404(b) 'as a rule of exclusion rather than a rule of inclusion.'" Willis, 225 N.J. at 100 (quoting State v. Marrero, 148 N.J. 469, 483 (1997)).

The motion court failed to conduct the "careful and pragmatic evaluation" of the evidence required to determine if the probative value of the evidence concerning the robbery and kidnapping was outweighed by its potential prejudice in proving defendant's identity as a perpetrator of the burglaries. See Willis, 225 N.J. at 99. The record does not reveal any physical evidence connecting defendant's alleged commission of the robbery and kidnapping to the burglary-related offenses or showing he committed those offenses.[6] Again, defendant's alleged commission of the robbery

---

[6] The State argues that defendant was found in possession of "one of the burner phones" used to call the various homes during the commission of the offenses. In support of the argument, the State cites to Hannigan's grand jury testimony. Hannigan, however, did not testify there was any data retrieved from defendant's phone

and kidnapping was shown solely through Hannigan's testimony about Mosley's statements.

Mosley's statement concerning defendant's alleged commission of the robbery and kidnapping has no probative value in establishing defendant's identity as the perpetrator of the other crimes charged in the indictment. That is, if the burglary-related charges were tried separately, Mosley's testimony defendant committed the robbery and kidnapping would not establish defendant's identity as the perpetrator of the burglaries. The State does not argue otherwise. The State contends only that evidence concerning the robbery and kidnapping is probative of defendant's identity because the crimes charged in the indictment are signature crimes. As noted, we find no support in the record for that position.

In addition to Hannigan's testimony about Mosley's statements, Hannigan explained the phones found in Mosley's possession were used to call all of the residences prior to the commission of the crimes charged in the indictment. It might be argued Mosley's statement that defendant was a perpetrator of all

---

showing it was used to call A.B.'s residence or any of the residences where the burglaries were committed. Hannigan testified only that the phones recovered from Mosley were used to call the various residences.

A-0481-15T1

of the offenses, and the data retrieved from the phones, establish defendant's identity by connecting him to the commission of all of the crimes charged in the indictment.

Even if viewed in that manner, however, evidence concerning the robbery and kidnapping is only minimally probative of defendant's identity as a perpetrator of the burglaries because it is duplicative and cumulative. State v. Weaver, 219 N.J. 131, 151 (2014) (noting that other crimes evidence is minimally probative where it constitutes "needless presentation of cumulative evidence"). That is, Mosley's statement that defendant committed the robbery and kidnapping adds little to his statement directly implicating and identifying defendant as a perpetrator of the thirty burglary-related offenses charged in the indictment. Thus, there is less prejudicial evidence of defendant's identity as a perpetrator of the burglary related offenses than Mosley's statement concerning defendant's commission of the robbery and kidnapping. See State v. Jenkins, 178 N.J. Super. 347, 365 (2004) (citation omitted) ("[I]n deciding whether prejudice outweighs probative value, 'a court must consider the availability of other evidence that can be used to prove the same point.'").

Under the fourth prong of the Cofield standard, we weigh the probative value of the evidence concerning the robbery and kidnapping against the possible prejudice defendant would suffer

if the evidence was admitted to prove the thirty burglary-related offenses.  Willis, 225 N.J. 85, 99.  The grand jury testimony showed that during the robbery and kidnapping eighty-five-year-old A.B. "was manhandled and thrown onto [a] chair," her hands and feet were bound with a phone cord, and she was tied to the leg of a chair.  A.B. was placed on her knees with her hands pulled behind her back, with her chest and stomach face down over the front of the chair.  She was left in that position during the short time the perpetrators were in her home and for the four hours that passed before her son found her.

The evidence showing the manner in which the robbery and kidnapping of A.B. was committed demonstrates a propensity to use violence and force against a helpless victim that was not relevant in the eight burglaries.  We are convinced the evidence posed an obvious and compelling potential for substantial and undue prejudice against defendant on the other thirty charges in the indictment.  The prejudice clearly outweighed the negligible, if not nonexistent, probative value of the evidence.

We are convinced evidence concerning the robbery and kidnapping was not admissible under N.J.R.E. 404(b) to prove defendant's identity as the perpetrator of the thirty burglary-related charges.  The court erred by finding otherwise, and by denying defendant's severance motion.  See Sterling, 215 N.J. at

22

73. We reverse the court's order denying defendant's severance motion, vacate defendant's conviction and sentence, and remand for further proceedings consistent with this opinion.

III.

Although our reversal of defendant's conviction renders it unnecessary to address his remaining arguments, we offer the following comments in the event defendant is convicted of any of the offenses after trial or in accordance with a negotiated plea agreement on remand. Defendant challenged the court's order that he make restitution in the amount of $30,803.45 at the rate of $100 per month following his release from incarceration. He contended the court erred by ordering restitution without conducting a hearing or making any findings about his ability to pay. The State agreed, as do we.

A determination that a defendant shall pay restitution requires, at a minimum, a summary hearing to protect a defendant's due process rights, State v. Pessolano, 343 N.J. Super. 464, 479 (App. Div. 2001) (citations omitted), unless there is no dispute as to the issue, State v. Orji, 277 N.J. Super. 582, 589-90 (App. Div. 1994); see also State v. Jamiolkoski, 272 N.J. Super. 326, 329 (App. Div. 1994) (holding that a hearing other than a summary proceeding must be conducted when there exists a good faith dispute regarding a defendant's ability to pay). The judge is required

23

to "explain the reasons underlying the sentence, including the decision to order restitution, the amount of the restitution, and its payment terms." State v. Scribner, 298 N.J. Super. 366, 371 (App. Div. 1997).

If on remand the court is required to determine the issue of restitution, it shall "conduct a hearing at which the parties may present evidence regarding" the victims' losses and defendant's ability to pay. State v. Kennedy, 152 N.J. 413, 425 (1998). If the court sentences defendant to pay restitution, it shall "explain the reasons underlying its decision, including the amount of restitution awarded and the terms of payment." Ibid.

Defendant also argued the court erred by stating in the judgment of conviction that it "does not consent to a reduction of [defendant's] primary parole eligibility date pursuant to N.J.S.A. 30:4-123.67." The statute authorizes a defendant to enter into a written parole contract agreement with the New Jersey Department of Corrections (NJDOC) stipulating that the defendant's completion of "individual programs of education, training, or other activity" will result in a reduction of the defendant's primary parole eligibility date under N.J.S.A. 30:4-123.52. N.J.S.A. 30:4-123.67(a); see also Trantino v. N.J. State Parole Bd., 166 N.J. 113, 208 n.3 (2001) (Baime, J., dissenting). Defendant claims the sentencing court has no role in the decision

allowing entry into a parole agreement and, as a result, the court's statement in the judgment of conviction was erroneous and should be deleted.

A sentencing court may either provide or withhold consent to a reduction in a defendant's primary parole eligibility date. N.J.S.A. 30:4-123.67(a), which allows a defendant's entry into a parole agreement reducing the primary parole eligibility date, is qualified by N.J.S.A. 30:4-123.52. The statute requires the sentencing court's consent to a reduction in a defendant's primary parole eligibility date. N.J.S.A. 30:4-123.52(b).

Thus, a sentencing court may include in a judgment of conviction its lack of consent to any reduction of a defendant's primary parole eligibility date that may be sought by entering into a parole contract under N.J.S.A. 30:4:123-67(a). A sentencing court's consent to a reduction of defendant's primary parole eligibility date is required under N.J.S.A. 30:3-123.52(b).

Reversed and remanded for further proceedings in accordance with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0481-15T1