**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1848-17T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

CHAKIB AMINE, a/k/a
AMINE CHAKIB,

      Defendant-Appellant.

_____

          Argued April 2, 2019 – Decided  July 11, 2019

          Before Judges Yannotti, Rothstadt and Natali.

          On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 16-04-0671.

          Steven D. Altman argued the cause for appellant (Benedict and Altman, attorneys; Steven D. Altman and Philip Nettl, on the brief).

          David M. Liston, Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Middlesex County Prosecutor, attorney; David M. Liston, of counsel and on the brief).

PER CURIAM

On April 20, 2016, defendant was charged in a ten-count indictment with third-degree terroristic threats, N.J.S.A. 2C:12-3(a) (count one), fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count two), third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count three), second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count four), fourth-degree tampering with physical evidence, N.J.S.A. 2C:28-6(1) (count five), third-degree hindering apprehension of prosecution of oneself, N.J.S.A. 2C:29-3(b)(1) (count six), third-degree witness tampering, N.J.S.A. 2C:28 5(a)(2), (3), and (5) (counts seven, eight, and nine), and fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1(a) (count ten).

The court dismissed counts eight through ten during trial, and a jury found defendant not guilty of witness tampering in count seven. The jury also found defendant not guilty of terroristic threats in count one, but guilty of the lesser-included offense of harassment, N.J.S.A. 2C:33-4. In addition, the jury found defendant guilty of counts two, three, five, and six, not guilty of aggravated assault in count four, but guilty of a lesser-included offense of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2). After the court denied defendant's

2

motion for a new trial and sentenced him, he filed this appeal raising the

following issues:

POINT I

DEFENDANT'S CONVICTION MUST BE REVERSED, BECAUSE THE JURY INSTRUCTIONS ON SELF-DEFENSE WERE FATALLY INCOMPLETE.

POINT II

DEFENDANT'S CONVICTION MUST BE REVERSED[] BECAUSE THE TRIAL COURT MISAPPLIED THE LAW IN DETERMINING WHETHER TO ADMIT EVIDENCE OF OTHER OCCASIONS WHERE [JOEL] RIVERA ACTED AGGRESSIVELY TOWARD DEFENDANT.

POINT III

DEFENDANT'S CONVICTIONS MUST BE REVERSED, BECAUSE JOEL RIVERA WAS ORDERED TO TESTIFY WITHOUT A PROPER GRANT OF IMMUNITY.

POINT IV

EDUARDO FRANCO WAS IMPROPERLY PRECLUDED FROM TESTIFYING ABOUT DAWN KAMPF'S CHARACTER.

POINT V

DEFENDANT'S CONVICTION FOR HARASSMENT, AS A LESSER-INCLUDED OFFENSE OF COUNT [ONE] OF THE INDICTMENT, MUST BE

3

VACATED BECAUSE IT VIOLATED DEFENDANT'S RIGHT TO A UNANIMOUS VERDICT.

POINT VI

THE STATE WAS IMPROPERLY PERMITTED TO INTRODUCE DAWN KAMPF'S TESTIMONY THAT DEFENDANT TOLD HER NOT TO APPEAR FOR TRIAL.

Having reviewed the arguments advanced in light of the record and governing law, we affirm.

I.

We derive the following facts from the proceedings below. On July 29, 2014, Dawn Kampf, a driver for Amigo Medical and Car Service (Amigo), was parked in an Amigo van with her granddaughter, Ijahnea Newton, outside of the New Brunswick train station waiting to pick up Kampf's boyfriend, Joel Rivera. Soon after Rivera arrived, defendant drove toward the van and stopped "a couple of feet away." Kampf testified at trial that defendant began "screaming, yelling, threatening [her] to move, [and told her] that [she] was not allowed to park there because [she] was not [driving] a New Brunswick" taxicab. Kampf told defendant to leave her alone and that she was leaving after picking up Rivera. According to Kampf, defendant threatened her by stating, "okay, I got something for you. You don't want to move, just wait right there, I got something for you."

4

Kampf stated that defendant then pulled his taxi in front of Kampf's van, got out of his vehicle, and retrieved a screwdriver from the trunk, while repeating, "I got something for you." Kampf also stated that when Rivera began yelling at defendant to leave Kampf alone, defendant ran toward Rivera with the screwdriver in his hand. Rivera testified that he threw one of his shoes at defendant in an attempt to keep defendant away.

Defendant chased Rivera, who fell during the pursuit. While Rivera was on the ground, defendant began punching and swinging at him. Kampf stated that defendant stabbed Rivera in the arm with the screwdriver as they were fighting. After Rivera was able to get off the ground, defendant ran into the taxi office and Rivera, who was angry, followed him. Newton testified that she noticed Rivera "had a couple of holes in his arm." According to Bassam Abourjeily, a Victory Taxi employee who was working behind a glass window inside the office, defendant repeatedly asked him to call the police. Defendant then threw a chair at Rivera, who left the taxi office. Defendant also exited the office, but returned approximately two minutes later, when he tossed the screwdriver onto Abourjeily's desk and asked him to keep it there.

Officer Sean Freeman of the New Brunswick Police Department was dispatched to the scene with another officer. Freeman testified that when they

arrived, he observed defendant, Rivera, Kampf, and Newton within several feet of each other arguing. Freeman approached the threesome while his partner spoke with defendant. According to Freeman, Rivera appeared to be in distress, "had two puncture wounds to his left arm," and there was "blood running down his arm." In addition, Freeman testified that Rivera stated "he became involved in an argument with [defendant] which turned physical and resulted in him being stabbed" by defendant with a screwdriver that defendant retrieved from the "rear of his vehicle," and that defendant thereafter ran across the street to a taxicab stand.

After speaking with Rivera, Freeman met with defendant. According to Freeman, defendant stated he first observed the screwdriver during a physical altercation with Rivera in the taxi office, and that when he noticed it, "he passed it through the window" to Abourjeily in an effort to prevent "Rivera from using it as a weapon." Freeman also testified that defendant stated Rivera hit him in the face "with a bag of unknown items," but Freeman did not see Rivera with a bag or observe any injury to defendant's facial area.

Freeman then entered the taxi office and spoke with Abourjeily, who produced the Phillips-head screwdriver that defendant threw onto his desk. Freeman observed "blood . . . in the crevices of the tip" of the screwdriver, and

6

noticed blood smeared on a wall in the hallway of the office. After collecting evidence and taking witness statements, the police charged defendant with aggravated assault and possession of a weapon. Rivera was examined by emergency medical technicians, and soon after was treated for his injuries at Robert Wood Johnson Hospital. Frank Basile, a forensic scientist and DNA analyst, testified as an expert witness at trial that he was able to confirm the substance on the tip of the screwdriver was blood. Basile also explained that he determined through DNA analysis the blood on the screwdriver was Rivera's.

On two occasions after the underlying incident but prior to trial, defendant and Rivera crossed paths in New Brunswick. Rivera allegedly threatened to harm defendant during both events, which occurred on December 4, 2015, and June 3, 2016, and which resulted in defendant filing complaints charging Rivera with harassment under N.J.S.A. 2C:33-4. At a preliminary hearing, the court granted the State's motion in limine to suppress evidence relating to those two events and complaints.

Abourjeily testified that a few months after the underlying incident, defendant called him and told him not to go to court if he was asked to appear. Similarly, Kampf testified that in March 2017, as she was leaving a bar in New Brunswick, she saw defendant parked in the middle of the street. According to

Kampf, defendant yelled to her, "[o]h, you don't have to come to court, forget about everything. Joel and I are friends now. It's all over."

## II.

In Point One, defendant contends the court committed plain error by charging the jury with "fatally incomplete" instructions on self-defense. Specifically, defendant argues that the court "prejudiced [his] right to a fair trial" by failing to state explicitly that self-defense was a justification for all of the lesser-included aggravated and simple assault offenses, and for the weapons offenses in counts two and three of the indictment. After reviewing the jury charges in their entirety, we conclude that the court clearly instructed the jury that self-defense was a defense to all of the lesser-included assault offenses. Similarly, we find no error in the court's instruction on the weapons offense in count three, and conclude that any error in failing to give an explicit instruction that self-defense was relevant to the weapons offense in count two was harmless.

"Appropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981). The charge is the jury's road map of the law to guide it in its deliberations. State v. Martin, 119 N.J. 2, 15 (1990). We expect that the jurors follow the court's instructions. State v. T.J.M., 220 N.J. 220, 237 (2015).

In reviewing a claim of error relating to a jury charge, we consider the alleged error "in light of the entire charge" and evaluate it "in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). When counsel fails to "object[] at the time a jury instruction is given, 'there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case.'" State v. Montalvo, 229 N.J. 300, 320 (2017) (quoting State v. Singleton, 211 N.J. 157, 182 (2012)).

Further, when no objection is made to the charge, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error in jury charges is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

Here, the charge on self-defense was clear and entirely consistent with the model jury charge. See Model Jury Charges (Criminal), "Justification – Self Defense In Self Protection (N.J.S.A. 2C:3-4)" (rev. June 13, 2011). The court's

self-defense instructions followed its aggravated assault charge and each of the related lesser-included offenses. We acknowledge that the court preceded its self-defense charge with the comment that "[t]he indictment charges that defendant has committed the crime of aggravated assault, attempting to commit serious bodily injury," but it is clear from a fair reading of the court's instructions that the self-defense charge was not limited to that offense.

Indeed, the aforementioned statement tracks the first sentence of the model jury charge, see ibid., and immediately prior to giving that statement, the court diligently identified the elements of each of the lesser-included offenses. Further, after explaining at the end of the self-defense charge that "the [S]tate has the burden to prove to you beyond a reasonable . . . doubt that the . . . defense of self-defense is untrue," and that the "defense only applies if all the conditions or elements previously described exist," the court stated, "[o]kay, we're done with the assault charges now." The court also instructed the jurors to "consider [the court's instructions] in their entirety and not pick out any particular instruction and overemphasize it." In sum, we conclude that viewed in their

entirety, the instructions made clear that self-defense applied to all of the assault-related offenses the judge had discussed.[1]

Nonetheless, defendant argues that the court's failure to make an explicit statement that the justification of self-defense applied to every lesser-included assault offense requires reversal under State v. Gentry, 439 N.J. Super. 57 (App. Div. 2015). In Gentry, we held that the trial court committed reversible error by failing to instruct the jury that "self-defense was a complete justification for aggravated manslaughter and manslaughter, in addition to being a defense to murder." Id. at 62. Here, however, as we have explained, a fair reading of the entire charge reveals that the court instructed the jury that self-defense was a justification for all of the assault offenses. Therefore, defendant's reliance on Gentry is misplaced.

Similarly, we find no error in the court's instruction on the weapons offense in count three, possession of a weapon for an unlawful purpose. N.J.S.A. 2C:39-4(d) provides that "[a]ny person who has in his possession any

---

[1] In addition, defense counsel in closing arguments stated to the jury, "if you feel that [defendant] caused that injury [to Rivera] and it wasn't through self-defense, then you can find him guilty of a simple assault, and that's for you to consider." Having so advised the jury that self-defense applies to a lesser-included assault offense, defense counsel's failure to object to the court's jury instructions on that precise issue further supports the presumption that the charge "was unlikely to prejudice" defendant. See Montalvo, 229 N.J. at 320.

weapon, except a firearm, with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the third degree." "The affirmative defense of justification is not relevant" under that statute. State v. Williams, 168 N.J. 323, 332 n.1 (2001) (referring to N.J.S.A. 2C:39-4(a), paragraph one of which differs from N.J.S.A. 2C:39-4(d) only with respect to the weapon possessed) (citing State v. Harmon, 104 N.J. 189, 207 (1986)). Rather, "[o]nly in those rare and momentary circumstances where an individual arms himself [or herself] spontaneously to meet an immediate danger should the justification afforded by N.J.S.A. 2C:3-4 be considered." Harmon, 104 N.J. at 208–09.

In charging the jury on that offense, the court did not use the phrase "self-defense," but the court did explain that:

> If you find that the defendant had a lawful purpose, for example, to use the . . . weapon to protect himself or another against the . . . use of unlawful force, or to protect his property, or if you have a reasonable doubt as to the defendant's purpose, then the [S]tate has failed to carry its burden of proof on this element beyond a reasonable doubt.

Because "self-defense is not a defense" to possession of a weapon for an unlawful purpose, but instead is "a lawful purpose for possession" of a weapon, see Cannel, New Jersey Criminal Code Annotated, cmt. 3 on N.J.S.A. 2C:39-4 (2019), any errors in the court's instruction on count three were "not 'sufficient

to raise a reasonable doubt as to whether [they] led the jury to a result it otherwise might not have reached." See State v. Prall, 231 N.J. 567, 588 (2018) (alteration in original) (quoting State v. Daniels, 182 N.J. 80, 95 (2004)).

Further, although the court did not provide similar language when instructing the jury on unlawful possession of a weapon in count two, we conclude any error in that regard was harmless. N.J.S.A. 2C:39-5(d) provides that "[a]ny person who knowingly has in his possession any" weapon other than a firearm "under circumstances not manifestly appropriate for such lawful uses as it may have is guilty of a crime of the fourth degree." The rare circumstances in which self-defense is relevant to N.J.S.A. 2C:39-4(d) also arise in the context of N.J.S.A. 2C:39-5(d). See State v. Kelly, 118 N.J. 370, 385 (1990).

Having been instructed that possessing a weapon for the purpose of protecting oneself is a lawful purpose, the jury's finding that defendant was guilty of N.J.S.A. 2C:39-4(d) necessarily precludes a finding that defendant possessed the screwdriver in circumstances appropriate for its lawful uses under N.J.S.A. 2C:39-5(d). Similarly, by finding defendant guilty of aggravated assault for purposefully or knowingly causing Rivera bodily injury with a deadly weapon, see N.J.S.A. 2C:12-1(b)(2), after being instructed that self-defense would legally justify that conduct, the jury clearly found that defendant

13

possessed the screwdriver "under circumstances not manifestly appropriate" for lawful purposes.  See N.J.S.A. 2C:39-5(d).  Thus, to the extent that the evidence, viewed in the light most favorable to defendant, warranted a specific self-defense instruction as to either weapons offense, we conclude the court's failure to give that instruction was harmless.

## III.

Next, defendant maintains the court "misapplied the law" in refusing to admit evidence that Rivera allegedly harassed and threatened defendant on two occasions on December 4, 2015, and June 3, 2016, well after the underlying July 29, 2014 incident.  Defendant asserts that proof of these acts was admissible as "other act" evidence under Rule 404(b).  We disagree.

We review a trial court's ruling on the admissibility of other crimes, wrongs, or bad acts for abuse of discretion, affording great deference to the court's decision and reversing only where there was a clear error of judgment.  State v. Barden, 195 N.J. 375, 390-91 (2008).  Generally, evidence of other crimes or bad acts is inadmissible "to prove the disposition of a person in order to show that such person acted in conformity therewith" on another occasion.  N.J.R.E. 404(b).  However, a defendant "may use other-crimes evidence in support of his [or her] defense 'if in reason it tends, alone or with other evidence,

to negate his [or her] guilt of the crime charged.'" Weaver, 219 N.J. at 157 (quoting State v. Garfole, 76 N.J. 445, 453 (1978)).

Such defensive use of other crimes or bad acts evidence, "sometimes referred to as 'reverse 404(b)' evidence," is not subject to the more stringent Cofield test of Rule 404(b) admissibility "because 'an accused is entitled to advance in his [or her] defense any evidence which may rationally tend to refute his [or her] guilt or buttress his [or her] innocence of the charge made.'" Id. at 150 (quoting Garfole, 76 N.J. at 453). Instead, "[a]dmissibility of this evidence is governed by [Rule] 401, not [Rule] 404(b)." Id. at 157. Thus, "simple relevance to guilt or innocence" is sufficient, as "prejudice to the defendant is no longer a factor." Id. at 150 (quoting Garfole, 76 N.J. at 452-53). Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401.

In addition to relevance, this "more relaxed standard" still requires the court to "determine that the probative value of the evidence is not substantially outweighed by any of the Rule 403 factors" for exclusion. Weaver, 219 N.J. at 151; see N.J.R.E. 403. Under this standard, "the question . . . is not relevance as such, but the degree of relevance balanced against the counter considerations expressed in [Rule 403] of undue consumption of time, confusion of the issues[,]

and the misleading of the jury." Garfole, 76 N.J. at 451. "This determination is [also] highly discretionary." Weaver, 219 N.J. at 151.

Defendant maintained the incidents, where Rivera allegedly "acted aggressively toward [defendant], and [defendant] did not respond with force, [are] highly relevant to Rivera's motive to fabricate his testimony." According to defendant, if Rivera "is going to harass . . . [d]efendant any time he sees him," Rivera "would certainly be more willing to falsely incriminate him . . . at trial." In addition, defendant maintains Rivera's willingness "to give testimony against [defendant] was directly tied to those complaints" and is therefore "probative of his credibility." Finally, defendant argues the December 4, 2015 and June 3, 2016 incidents "were relevant to show Rivera was . . . the aggressor" on the date of the underlying altercation.

In granting the State's motion in limine to preclude evidence of the subsequent incidents, the court stated it would "allow only . . . relevant evidence" as to what "happened in July 2014." The court concluded that evidence of Rivera's conduct that took place so long after the July 2014 incident would prejudice the State and "unnecessarily [prolong] this trial and cause . . . unnecessary issues to be presented for the jury to have to consider."

Based on these findings, it is clear that the court evaluated the evidence under Rules 401 and 403, and concluded the evidence was inadmissible as any relevance was "substantially outweighed by the risk of . . . undue prejudice" and the potential to mislead the jury, "or cause undue delay, [and] waste of time. . . ." See N.J.R.E. 403. We discern no abuse of discretion in the court's decision to preclude introduction of the December 4, 2015, and June 3, 2016 events.

IV.

Next, defendant claims the court committed error when it "ordered Rivera to testify," without a proper grant of immunity, and in violation of Rivera's due process and Fifth Amendment rights against self-incrimination. Defendant also contends the State violated his rights under the Victim's Rights Amendment, N.J. Const. art. I, ¶ 22, and the Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 to -38, by dismissing the disorderly persons complaints filed against Rivera to secure his testimony against defendant. We have considered defendant's arguments in light of the record and applicable legal principles and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11–3(e)(2). We make the following brief comments.

The right to be free from self-incrimination is personal and does not "accord standing to a third party . . . to vicariously assert that another's right

against self-incrimination has been violated." State v. Baum, 199 N.J. 407, 417 (2009); see also In re Boiardo, 34 N.J. 599, 604 (1961). Accordingly, defendant lacked standing to assert Rivera's Fifth Amendment right to remain silent.

Further, defendant's claims are belied by the record. Rather than order Rivera to testify contrary to his Fifth Amendment rights, Rivera testified voluntarily, after the State dismissed the pending charges against him, and after consulting with counsel. Nor is there any support for defendant's claim that the State improperly dismissed the charges against Rivera, thereby permitting him to testify, in violation of his due process rights and those under the Victim's Rights Amendment.

The Victim's Rights Amendment confers upon victims "the right to be present at public judicial proceedings," N.J. Const. art. I, ¶ 22, but there is no indication that defendant was deprived of that right. With respect to the Crime Victim's Bill of Rights, the only right defendant contends the State violated was his right "[t]o have the opportunity to consult with the prosecuting authority prior to the conclusion of any plea negotiations," see N.J.S.A. 52:4B-36(o).

However, the Legislature made clear that "nothing herein shall be construed to alter or limit the authority or discretion of the prosecutor to enter into any plea agreement which the prosecutor deems appropriate[.]" N.J.S.A.

18                                                              A-1848-17T1

52:4B-36(o); see State v. Means, 191 N.J. 610, 618 (2007); accord State v. Kraft, 265 N.J. Super. 106, 111 (App. Div. 1993) ("it is the fundamental responsibility of the prosecutor to decide whom to prosecute").  Although the consequences of a prosecutor's failure to consult with a victim before settling plea negotiations are not well established, because the prosecutor retained the authority to enter the plea agreement, and sought the court's approval of it in defendant's presence, we conclude defendant suffered no prejudice as a result of the State's actions, and that reversal of his convictions is not warranted under these unique circumstances.

V.

Defendant further contends the court committed reversible error when it precluded Franco, Kampf's co-worker at Amigo, from testifying that Kampf has a character for untruthfulness.  Defendant proffered Franco as a character witness to testify, in the form of opinion and reputation, that Kampf was dishonest because she stole money from Amigo.  Defendant adds that the court's determination that Franco's testimony was "more probative of her being a poor employee than being probative of her character for truthfulness" was incorrect. He asserts that upon hearing Franco's testimony of Kampf's dishonesty, "the jury may have discredited [her] testimony and come to a different result . . . ."

19

As we have explained, appellate courts grant "substantial deference to the evidentiary rulings of a trial judge," Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286, 319 (2006), and will not disturb such rulings absent an abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008). Under that deferential standard, a reversal will occur only if the court's evidentiary ruling was a "clear error of judgment." Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383–84 (2010) (quoting State v. Koedatich, 112 N.J. 225, 313 (1988)).

A party may attack a witness's credibility with "evidence in the form of opinion or reputation" relating to the witness's character for untruthfulness. N.J.R.E. 608(a). Lay opinion that a witness has a character for untruthfulness "will be admissible if it is founded upon the character witness' perceptions of the prior witness and will assist the jury in determining the fact in issue." Fitzgerald, 186 N.J. at 310. "[T]he foundation for reputation testimony" requires the proponent to establish "the relationship of both the subject and the witness to the relevant community and the existence of an expressed community opinion regarding a trait of the subject's character." Id. at 312; see id. at 309 ("To the extent that there is an opinion in the reputation form of character evidence, it is the community's opinion not that of the testifying witness.").

A-1848-17T1

Before declining to admit Franco's proffered opinion and reputation testimony, the court conducted a Rule 104 hearing, at which Franco testified that he worked with Kampf at Amigo for approximately eight months and stated that "she's not [an] honest person."  Franco also stated that he monitored Kampf's departures and arrivals for customers on his computer screen and that it was his "opinion," his "view," and his "feeling that she was shorting the company, [that] she was keeping money for herself," and that she did not report to Amigo all of the money she earned on trips.  In addition, Franco testified that other Amigo workers complained to him that Kampf would not answer calls to pick up customers and that "she wasn't doing her job the right way."

After hearing the testimony, the court determined that although Franco "has knowledge of specific acts as to why [Kampf] was a bad employee . . . , that doesn't go to reputation in the community as to her truthfulness."  Instead, the court found that Franco's proffered reputation testimony "had to do with [Kampf's] ability to dispatch in a timely manner," which might have caused legitimate business concerns for her co-workers, but did not relate to Kampf's reputation for untruthfulness.

With respect to "[t]he issue of skimming" money off the top of Amigo's profits, the court determined that "this was [Franco's] observation and was

limited to [Franco's] observation," and was not "something that was rampant throughout the . . . taxi community." Therefore, concluding that "[t]he testimony of a character witness just has to be" in the form of "reputation," because the court found that Franco "can't speak about . . . Kampf's reputation for . . . lack of truthfulness within th[e] community," it excluded the proffered testimony.

We perceive no abuse of discretion in the court's decision to exclude Franco's proffered reputation testimony. The court's finding that that testimony was not indicative of Kampf's character for untruthfulness has substantial support in the record, specifically Franco's testimony that he heard "nothing" about Kampf outside of the Amigo office, and that the reason some Amigo workers did not want Kampf driving was because she did not answer phone calls and simply "wasn't doing her job the right way."

Further, although the court incorrectly concluded that opinion testimony is an inadmissible form of evidence of a witness's character for untruthfulness, see N.J.R.E. 608(a); Fitzgerald, 186 N.J. at 419-21, considering the overwhelming independent evidence supporting Kampf's testimony that defendant stabbed Rivera with a screwdriver outside, we conclude the court's error was "harmless beyond a reasonable doubt," see State v. Tillery, __ N.J. __, __ (2019) (slip op. at 7); see also State v. Gillespie, 208 N.J. 59, 93 (2011)

(finding harmless error when "overwhelming proof" established guilt "independent of" improperly admitted evidence).

Rivera's and Newton's testimony corroborated Kampf's version of the July 29, 2014 event, specifically that defendant retrieved the screwdriver from the trunk of his vehicle, as opposed to finding it after the fact lying on the floor in the hallway of the taxicab stand. Officer Freeman observed "blood . . . in the crevices of the tip" of the screwdriver, and noticed blood smeared on a wall in the hallway of the taxicab stand. Freeman also testified that Rivera told him at the scene that defendant had stabbed him with the screwdriver outside. Basile confirmed that the substance on the screwdriver was blood, and testified that through DNA analysis he was able to determine the blood was Rivera's. Franco's proffered opinion testimony did not purport to impeach Rivera, Newton, Freeman, or Basile. Thus, the court's decision to preclude Franco's proffered opinion testimony, which would have merely impeached Kampf's testimony that was independently supported by other fact and expert witnesses, does not create "a reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits . . . ." See State v. Macon, 57 N.J. 325, 338 (1971).

## VI.

Next, relying on State v. Parker, 124 N.J. 629 (1991), defendant contends that his harassment conviction should be reversed because the court's jury instruction, and verdict sheet, "violated [his] right to a unanimous verdict." Specifically, defendant claims the court committed reversible error by charging the jury on "different subsections" of N.J.S.A. 2C:33-4 and referring to those subsections as "different options for a guilty finding, without [providing] an instruction that [the jurors] must be unanimous on which option applied."

In addition, defendant argues that the court "invited a patchwork verdict by blending the elements of distinct offenses," particularly in the verdict sheet, and claims the court's general unanimity jury charge was insufficient to cure these alleged defects. According to defendant, because "the court sought separate verdicts for each form" of simple assault, an offense "which is also divided into three separate subsections," the failure to separate the subsections of the harassment statute in the verdict sheet means the court did not "seek a unanimous verdict . . . for the [h]arassment charge," which constitutes "plain error." Again, we disagree.

A-1848-17T1

With respect to the harassment offenses, other than objecting to the court's use of the word "options,"[2] at trial, defendant did not object to the substance of the court's charge, or the verdict sheet. Consequently, as we did with respect to defendant's challenge to the court's self-defense charge, we evaluate defendant's argument under the plain error standard and determine "whether the instructions were clearly capable of producing an unjust result." Parker, 124 N.J. at 638.

The principle of unanimity in criminal trials is deeply ingrained in our jurisprudence. State v. Frisby, 174 N.J. 583, 596 (2002) (citing Parker, 124 N.J. at 633); see R. 1:8–9 (requiring unanimous verdicts in all criminal actions). "The notion of unanimity requires 'jurors to be in substantial agreement as to just what a defendant did' before determining his or her guilt or innocence." Frisby, 174 N.J. at 596 (quoting United States v. Gipson, 553 F.2d 453, 457 (5th Cir. 1977)).

Courts should provide "specific unanimity" instructions, which impose a requirement that the jury unanimously agree on the facts underlying the guilty verdict, when there is a specific request for those instructions and there exists a danger of a fragmented verdict. Parker, 124 N.J. at 637. In Parker, the Court

---

[2] Specifically, defense counsel's position was that "[o]ption implies you've got to choose one or the other. But the[] [jurors] don't have to choose either," because the jury could have found defendant not guilty of harassment.

explained that under certain circumstances, the unanimity requirement can be satisfied despite the possibility that jurors may not be unanimous in the facts on which the verdict is based. Id. at 633. The Court held that a general unanimity charge will not suffice:

> where the facts are exceptionally complex, or where the allegations in a single count are either contradictory or only marginally related to one another, or where there is a variance between the indictment and the proof at trial, or where there is a tangible indication of jury confusion.
>
> [Id. at 636 (quoting United States v. Ryan, 828 F.2d 1010, 1020 (3d Cir. 1987)).]

The Court in Parker further held that "[a]lthough such a charge should be granted on request, in the absence of a specific request, the failure so to charge does not necessarily constitute reversible error." Id. at 637. Instead, the Court endorsed an approach that narrows the focus to whether the charges "formed a core of conceptually-similar acts," and whether there was "any tangible indication of jury confusion." Id. at 639.

Applying these principles, we conclude that the jury charge did not constitute plain error. The verdict sheet states that defendant was charged with harassment for "making a communication in offensively coars[e] language or any other manner likely to cause annoyance or harm, or engaged in any other

26

course of alarming conduct with the purpose to alarm or seriously annoy" Kampf. While the use of the word "or" presents an opportunity for a non-unanimous verdict, under the first <u>Parker</u> prong, the allegations are not "contradictory or only marginally related to each other," but, instead, "formed a core of conceptually-similar acts relating to" defendant's interaction with Kampf on July 29, 2014. <u>See</u> <u>Parker</u>, 124 N.J. at 639. Further, the essential inquiry is whether, considering the proofs at trial, the court's instructions as a whole posed a genuine risk that the jury would be confused, and return a less than unanimous verdict. <u>State v. Gandhi</u>, 201 N.J. 161, 193 (2010).

The evidence before the jury supported a finding that defendant parked his vehicle directly in front of Kampf's van then repeatedly cursed and yelled at her, "I got something for you," both before he retrieved a screwdriver from his taxi and after he began brandishing it. That conduct supports a conviction of harassment under N.J.S.A. 2C:33-4(a) and (c). Evidence that defendant retrieved a screwdriver then yelled "I got something for you" to Kampf supports a finding that "with purpose to harass" Kampf, defendant made "a communication" in a "manner likely to cause annoyance or alarm" under N.J.S.A. 2C:33-4(a). Similarly, that evidence supports a finding that defendant "engaged in a[] course of alarming conduct with the purpose to alarm or

seriously annoy . . . Kampf," as the verdict sheet states and which N.J.S.A. 2C:33-4(c) prohibits. See State v. J.T., 294 N.J. Super. 540, 545 (App. Div. 1996) (explaining that "[c]onduct . . . does not require any minimum amount of time, duration, or separate components," and that merely "[p]lacing oneself in a location and remaining there for some time may constitute a 'course of conduct'").

In charging the jury, the court stated that "there are, in essence, two options under the harassment[] charge." The court explained that the "first option requires" the jury to find beyond a reasonable doubt that "defendant made one or more communications in offensively coarse language, or in any other manner likely to cause annoyance . . . or alarm," and that "defendant's purpose was to harass," or "[i]n other words, to annoy or alarm" Kampf. See N.J.S.A. 2C:33-4(a). Thereafter, the court instructed the jury that "[t]he other option or alternative under the harassment statute requires" a finding that "defendant engaged in a course of alarming conduct" or of repeatedly committed acts and that defendant's "purpose was to harass" Kampf, "[t]hat is, to alarm or seriously annoy" her. See N.J.S.A. 2C:33-4(c).

After detailing all of the charges, the court gave a clear, general unanimity instruction: "The verdict must represent the considered judgment of each and

28

every juror and must be unanimous as to each charge.  This means all of you must agree if the defendant is guilty or not guilty as to each of the particular charges that you will consider."  In light of the court's clear instructions, and because the harassment charges were based on the same factual allegations, we perceive no indication, or even a risk, that the word "or" in the verdict sheet or the judge's failure to give a specific unanimity instruction on each provision of the harassment statute created confusion about the jury's duty to render a unanimous verdict on the forms of harassment charged.  Thus, given the absence of any objection, and the fact that the court followed the appropriate model jury charges,[3] its failure to give a specific unanimity charge, instead of a general one, without any request, did not "possess[ ] a clear capacity to bring about an unjust result."  See State v. Adams, 194 N.J. 186, 207 (2008) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

With respect to the second Parker prong, the record contains no tangible indication of any jury confusion concerning the lesser-included harassment offenses.  The only evidence of any jury uncertainty is the one question it submitted to the court during deliberation, which was, "[d]id the defendant need

---

[3]  See Model Jury Charges (Criminal), "Criminal Final Charge" (rev. May 12, 2014); Model Jury Charges (Criminal), "Harassment (Lesser-Included Offense) (N.J.S.A. 2C:33-4)" (rev. Jan. 9, 2012).

to be aware of the terminology of aggravated assault or just a potential charge?" As the Court noted, not all questions by the jury demonstrate confusion as to unanimity. Parker, 124 N.J. at 639–40. The jury's sole question here had nothing to do with the harassment offenses, and in asking that question, "the jury did not indicate that it was confused concerning its responsibility to reach a unanimous verdict." See id. at 639.

## VII.

Finally, defendant maintains the court committed error when it failed to conduct a Rule 404(b) analysis before admitting Kampf's testimony that defendant told her she did not need to appear for trial. Defendant contends this testimony led the jury "to believe that [d]efendant was a serial witness tamperer, which was patently improper, and infected all" of his convictions. Defendant also claims the State did not inform him of Kampf's statement until "right before [her] trial testimony," thereby depriving him of "any meaningful opportunity to investigate" her allegation. We are not persuaded by these arguments.

Because of the dangers that admission of other crimes evidence presents, "evidence proffered under Rule 404(b) 'must pass [a] rigorous test.'" State v. Garrison, 228 N.J. 182, 194 (2017) (quoting State v. Kemp, 195 N.J. 136, 159

(2008)). Specifically, in <u>State v. Cofield</u>, 127 N.J. 328 (1992), the Court established a four-part test governing the admissibility of other-crime evidence:

1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[<u>Garrison</u>, 228 N.J. at 194 (quoting <u>Cofield</u>, 127 N.J. at 338).]

An essential determination in a 404(b) analysis is "whether the evidence relates to 'other crimes,' and thus is subject to continued analysis under Rule 404(b), or whether it is evidence intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly Rule 403." <u>State v. Rose</u>, 206 N.J. 141, 179 (2011). Evidence is "intrinsic" if it "'directly proves' the charged offense," or "if the[] [uncharged acts] facilitate the commission of the charged crime." <u>Id.</u> at 180 (quoting <u>United States v. Green</u>, 617 F.3d 233, 248-49 (3d Cir. 2010)). Where, as here, the court did not analyze the evidence under the <u>Cofield</u> test, we apply that test to the evidence de novo. <u>Garrison</u>, 228 N.J. at 194; <u>accord</u> <u>State v. Darby</u>, 174 N.J. 509, 518 (2002).

Under the first prong of the <u>Cofield</u> test, the evidence of defendant's statement to Kampf is relevant to a material issue, as it demonstrates defendant's pattern of witness tampering. With respect to the second prong, the evidence of defendant's statement is very similar to his statement to Abourjeily, in which he attempted to dissuade him from appearing at trial. Additionally, defendant's statement occurred close in time to the offenses charged, and while the charges were pending. The third prong is also satisfied because Kampf's testimony, which was accepted by the trial court, was clear and convincing. Finally, under the fourth prong, the probative value of the evidence is not outweighed by its prejudice to defendant, as Kampf's testimony was highly probative of the witness tampering charge, and any prejudicial effect of her testimony on the other charges was slight considering the weight of the independent evidence supporting defendant's convictions.[4]

In addition, we conclude that any error in admitting Kampf's testimony was harmless. Defendant was acquitted of all of the witness tampering charges, and as we have explained, there was overwhelming, independent evidence of

---

[4] In light of our decision that the court appropriately admitted the Rule 404(b) evidence, we need not reach the State's argument that the evidence was also admissible as "intrinsic" to the witness-tampering and hindering-apprehension crimes. <u>See</u> <u>Rose</u>, 206 N.J. at 179-80.

defendant's guilt to support all of his convictions. Since there is no "reasonable probability" that admitting Kampf's testimony about witness tampering "might have contributed to" any of defendant's convictions, any error in admitting that testimony was "harmless beyond a reasonable doubt." See Tillery, __ N.J. __ (slip op. at 7-8, 27-28) (quoting State v. Sanchez, 129 N.J. 261, 278 (1992)).

To the extent we have not addressed any of defendant's remaining contentions, it is because we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11–3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1848-17T1