**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2674-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEITH MCBRIDE, a/k/a
BRIAN ANDERSON, KEITH
MCBRIDGE, and KAISHAWN
WILLIAMS,

     Defendant-Appellant.

_____

Argued December 9, 2019 – Decided October 1, 2020

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 09-12-2112.

Philip Nettl argued the cause for appellant (Benedict and Altman, attorneys; Philip Nettl, on the brief).

Joie D. Piderit, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Joie D. Piderit, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Defendant Keith McBride appeals from the trial court's denial of his post-conviction relief (PCR) application without an evidentiary hearing. McBride collaterally attacks his convictions of, among other crimes, armed robbery and felony murder. He contends both trial counsel and appellate counsel failed to meet the constitutional standard for effective assistance of counsel established in Strickland v. Washington, 466 U.S. 668 (1984). He argues counsel should have objected to the testimony of a substitute DNA scientist; sought a judgment of acquittal on the robbery and felony murder counts; and objected to the jury instructions and verdict sheet. We affirm.

I.

We assume the reader's familiarity with the facts underlying defendant's convictions, which we reviewed on direct appeal. See State v. McBride, No. A-5966-09 (App. Div. Oct. 23, 2012). The State's case relied substantially on the testimony of Timisha Sanford, who observed McBride supply the handgun used to kill Robert Funderberk, and then dispose of Funderberk's body.

Sanford testified that she saw her friend Janean Owens with Funderberk at a sports bar. As Sanford later walked from the bar, Funderberk pulled up

beside her in his truck. Owens was inside, and asked Sanford to take a ride with them. Sanford complied and got in the back seat. Owens then stated they were going to pick up her boyfriend McBride from her apartment. After they arrived, Owens went up to her apartment.

A few minutes later, Sanford heard McBride and Owens talking behind the truck. She got out of the truck and joined them while Funderberk stayed inside the truck. McBride then gave Sanford a red rag with something inside of it, and told her, "handle that." Once she returned to the car, she realized the rag obscured a gun. Sanford immediately got out of the car and told McBride that she "wasn't doing that shit." Sanford indicated on cross-examination she did not know why McBride gave her the gun, or what he wanted her to do with it.

Owens then took the gun from Sanford, and said she would "get the n*****r." McBride told Sanford to "[g]et in the fuckin' truck." Once they all got back in the truck, McBride sat in the front passenger seat; Sanford was behind him; and Owens sat behind Funderberk.

While Funderberk was driving, Owens pointed the gun at the back of his head, and asked McBride, "If I pull it will it go off[?]" McBride responded, "trill," which Sanford testified means "yes." Owens then immediately fired the

A-2674-17T2

gun, shooting Funderberk in the head, killing him. McBride then yelled at Owens, "What the fuck did you do that for?"

At McBride's direction, Sanford took the wheel and drove the group to an industrial area in Newark, where they left Funderberk's body. Surveillance footage from a nearby building captured McBride and Owens removing Funderberk's body from the truck. They later abandoned the truck a few minutes' drive away.

When the police examined the crime scene, they recovered a few items from Funderberk's body, including a little over one dollar in coins, a cell phone, a yellow gold chain, and a gold ring. They did not find identification, such as a driver's license or credit cards. Funderberk's pants pockets had been turned inside out. Police later retrieved sneakers from ductwork at Owens's house, and pants from a garbage can near Owens's mother's house. Sanford said that Owens wore the sneakers and McBride wore the pants the night of the homicide. According to a report by State Police scientist Julie Weldon, Funderberk's DNA was found on McBride's pants. After Weldon left the State's employ, another scientist, Delores Coniglio, tested DNA on the sneakers and found it matched Funderberk's profile that Weldon prepared.

A-2674-17T2

In Indictment No. 09-12-2112, the State charged defendant with purposeful/knowing murder, N.J.S.A. 2C:11-3(a)(1); conspiracy to commit murder, N.J.S.A. 2C:11-3(a)(1)(2) and N.J.S.A. 2C:5-2; armed robbery, N.J.S.A. 2C:15-1; conspiracy to commit robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2; theft of personal property, N.J.S.A. 2C:20-3; theft of a motor vehicle, N.J.S.A. 2C:20-3; felony murder, N.J.S.A. 2C:11-3(a)(3); firearms offenses, N.J.S.A. 2C:39-4(a) and N.J.S.A. 2C:39-5(b); hindering apprehension offenses, N.J.S.A. 2C:29-3(a)(3) and N.J.S.A. 2C:29-3(b)(1); and disturbing human remains, N.J.S.A. 2C:22-1(a)(1) and 1(b). In a separate indictment, 07-01-0159, the State charged defendant with certain persons not to have weapons, N.J.S.A. 2C:39-7(b). The State tried defendant and Owens in separate proceedings.[1]

The jury found McBride guilty on all counts, except for purposeful/knowing murder, conspiracy to commit murder, and theft of personal property. In the aggregate, the trial judge sentenced McBride to fifty years in prison. On direct appeal, we affirmed the convictions, but remanded for the trial

---

[1] Owens was convicted of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a); third-degree conspiracy to commit theft by unlawful taking, N.J.S.A. 2C:5-2; third-degree theft by unlawful taking, N.J.S.A. 2C:20-2(b)(2); and multiple weapons offenses. We affirmed her convictions on direct appeal, State v. Owens, No. A-0803-09 (App. Div. Sept. 4, 2012), and later affirmed the denial of PCR without an evidentiary hearing, State v. Owens, No. A-3871-14 (App. Div. June 8, 2017).

court to merge the robbery conspiracy count into the substantive count, and to reconsider imposing consecutive sentences. On remand, the trial court reinstated its original aggregate sentence.

In his PCR petition, McBride certified that his trial counsel's initial strategy had been to attack Sanford's credibility, and to challenge the DNA scientist (Weldon) who linked the victim's DNA to the sample on McBride's clothing. However, once it became clear that Coniglio would testify to explain Weldon's findings, McBride asserted that his trial counsel changed strategy. Believing he could not object to Coniglio's testimony, trial counsel decided to concede in opening and summation that McBride was in the car and helped dispose of the body, but he had no prior plan to rob or kill Funderberk. Trial counsel also tried to undermine Sanford's credibility in order to cast reasonable doubt on the conspiracy, robbery, and felony murder charges.

In his pro se brief, McBride advanced claims of actual innocence. He asserted a Confrontation Clause violation, contended defective jury instructions deprived him of a fair trial, and argued both his trial and appellate counsel provided him ineffective assistance of counsel. The PCR court denied McBride's petition after finding it was timely filed.

A-2674-17T2

The court first denied the weight of the evidence claim, finding it "not cognizable in this collateral proceeding," and procedurally barred, since defendant did not move for a new trial pursuant to Rule 3:20-1. Additionally, the PCR court found the State's proofs to be "overwhelming," and thus defendant could not satisfy the exacting "fundamental injustice" standard of Rule 3:22-4(a)(2). The PCR court also found defendant's claims regarding the DNA witness procedurally barred, since counsel did not object to the witness's testimony at the 2010 trial. It also noted counsel did not object as part of the overall trial strategy.

The court also found defendant's claim regarding the verdict sheet to be procedurally barred, as the Appellate Division already considered it on direct appeal. Additionally, the court found defendant's claim that there should have been a special verdict on theft to be procedurally barred, as it was raised for the first time in the PCR proceeding.

On appeal, McBride raises the following claims:

POINT I

DEFENDANT SHOULD HAVE BEEN ENTITLED TO POST-CONVICTION RELIEF AFTER RECEIVING INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON DIRECT APPEAL, IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AMENDMENT TO THE UNITED STATES

7

CONSTITUTION, AND ARTICLE I, PARAGRAPH 10 OF THE NEW JERSEY CONSTITUTION.

A. TRIAL AND APPELLATE COUNSEL'S FAILURE TO ARGUE FOR A JUDGMENT OF ACQUITTAL ON COUNTS 4 AND 7 (ROBBERY AND FELONY MURDER), DEPRIVED DEFENDANT OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

B. TRIAL AND APPELLATE COUNSEL'S FAILURE TO OBJECT TO THE NUMEROUS DEFICIENCIES IN THE JURY CHARGE AND VERDICT SHEET, OR TO ARGUE THAT THEY CONSTITUTED PLAIN ERROR, DEPRIVED DEFENDANT OF THE EFFECTIVE ASSISTANCE OF COUNSEL.

C. TRIAL AND APPELLATE COUNSEL'S FAILURE TO REQUEST A SPECIAL VERDICT REGARDING THE OBJECT OF THE ALLEGED THEFT THAT PREDICATED THE ROBBERY CHARGE, DEPRIVED DEFENDANT OF THE EFFECTIVE ASSISTANCE OF COUNSEL

D. TRIAL AND APPELLATE COUNSEL'S FAILURE TO OBJECT TO DOLORES CONIGLIO'S TESTIMONY ABOUT THE HEARSAY REPORT OF JULIE WELDON, WHICH VIOLATED DEFENDANT'S RIGHT TO CONFRONTATION UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, WAS INEFFECTIVE ASSISTANCE OF COUNSEL.

POINT II

DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING ON HIS PETITION, BECAUSE HE RAISED PRIMA FACIE CLAIMS WARRANTING PCR RELIEF.

POINT III

DEFENDANT'S CLAIMS ARE NOT PROCEDURALLY BARRED.

## II.

To prevail on a claim of ineffective assistance of counsel, a defendant (1) must prove his counsel's performance fell below the standard established in the Sixth Amendment of the United States Constitution, and (2) "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694; see also State v. Fritz, 105 N.J. 42 (1987). We review de novo the PCR court's legal conclusions, and its factual inferences from the record, as the trial court did not hold an evidentiary hearing. State v. Harris, 181 N.J. 391, 415, 420-21 (2004).

## A.

We turn first to McBride's contention that his trial counsel was ineffective for failing to argue for a judgment of acquittal on the robbery and felony murder

A-2674-17T2

counts. He further asserts his appellate counsel was ineffective for failing to raise this claim on direct review. McBride argues that only "rank speculation" would enable the jury to infer from Sanford's testimony that McBride, as an accomplice to Owens, intended to rob Funderberk. Sanford denied any knowledge of a plan to rob Funderberk. Yet, McBride gave the gun to her and told her to "handle it." McBride argues "handle it" meant only "hold onto it." A judgment of acquittal on the robbery count would also require acquittal of the felony murder charge, which was predicated on the robbery.

We are unpersuaded. While defendant asserts that defense counsel never argued for a judgment of acquittal on the robbery and felony murder counts, this assertion is belied by the record. At the close of the State's case, counsel stated, "I do have the normal motion for judgment of acquittal on all counts," but then focused on the disturbing-human-remains counts, and briefly discussed the murder charge. Noting the motion presented a "very close call," the court granted the motion in part, and dismissed one of the disturbing-human-remains counts. The issue was not raised on direct appeal.

However, neither trial counsel nor appellate counsel were ineffective. "It is not ineffective assistance of counsel for defense counsel not to file a meritless motion." State v. O'Neal, 190 N.J. 601, 619 (2007). Had trial counsel presented

a fulsome argument regarding the robbery and felony murder counts, or had appellate counsel raised the issue on direct appeal, the result would have been the same.

An appellate court reviews a sufficiency of the evidence claim de novo. See State v. Williams, 218 N.J. 576, 593-94 (2014). When a defendant moves for a judgment of acquittal under Rule 3:18-1, a court "must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Id. at 594 (citing State v. Reyes, 50 N.J. 454, 458–59 (1967)).

"When 'each of the interconnected inferences [necessary to support a finding of guilt beyond a reasonable doubt] is reasonable on the evidence as a whole,' judgment of acquittal is not warranted." State v. Samuels, 189 N.J. 236, 246 (2007) (alteration in original) (quoting United States v. Brodie, 403 F.3d 123, 158 (3d Cir. 2005)). Moreover, if there is no direct evidence of a tacit plan or agreement, a jury may infer one from the "interconnected favorable inferences" the State presents. Id. at 249; see also State v. Stull, 403 N.J. Super. 501, 506 (App. Div. 2008) (noting that "[w]hen there is no direct

testimony, the fact-finder may rely solely on inferences available from the proofs").

Although evidence of McBride's intent was certainly circumstantial, Sanford's general narrative indicated McBride and Owens had a plan. McBride and Owens spoke behind the car, out of earshot from Funderberk. The jury could infer they were planning something at Funderberk's expense. Although McBride initially gave the gun to Sanford, he may have misunderstood that Sanford was in league with Owens; or Sanford may have, at trial, tried to minimize her own involvement. In any event, when Sanford refused to "handle it," and Owens "snatched" it from her, McBride did not intervene. Owens stated she was going to "get" Funderberk, referring to him by a racial epithet. McBride ordered Sanford to get in the truck, demonstrating his shared intent with Owens. Nor did McBride dissuade Owens when she pointed the gun at Funderberk's head. Rather, he confirmed to her that if she pulled the trigger, the gun would fire. Although McBride yelled at Owens immediately after she fired the shot, that did not necessarily mean McBride had no plan to rob, as McBride argues. Rather, the jury may have inferred that Owens had deviated from the plan by shooting Funderberk, whether they she did so intentionally or accidentally.

Also, although testimony was not clear whether Funderberk was wearing his large gold chain with a medallion that night, Sanford testified that McBride wore a large gold necklace with a medallion. Moreover, Sanford testified McBride did not have it before he removed Funderberk's body from the truck. She indicated at trial the necklace McBride wore "look[ed] like" the one Funderberk was known to wear. Furthermore, Funderberk was found without a driver's license, credit cards or cash, with his pants pocket inside out, although he had just come from a bar where he presumably had money to spend.

In sum, the State presented sufficient evidence for the jury to convict defendant of robbery and felony murder. Therefore, McBride did not receive ineffective assistance of counsel as a result of trial counsel's failure to argue more vigorously for a judgment of acquittal, and appellate counsel's failure to raise the issue on appeal.

B.

Defendant next contends trial counsel was constitutionally ineffective for failing to object to the jury charges on armed robbery, and appellate counsel was ineffective for not arguing the final jury charge constituted plain error.

In its initial charge to the jury on robbery, the trial court inconsistently stated on one hand, that the intent to commit theft must precede or be

13

coterminous with the use of force, and, on the other hand, the intent to commit theft may occur after the use of force. The judge stated:

> To find the defendant guilty of robbery the intent to commit the theft must precede or be coterminous with the use of force. In other words, defendant must have formed the intent to commit a theft before or during his use of force. If you find defendant formed the intent to commit a theft after he used the force he is guilty of the robbery.
>
> [Emphasis added.]

Without question, this jury charge was erroneous. The final sentence did not follow from the previous two, and it incorrectly stated the law. Trial counsel did not object to this charge.

Not surprisingly, the jury requested clarification the next day. The jury asked for the trial judge to "fully explain count 4, armed robbery." The court re-charged the jury on robbery, correcting the misstatement. The court explained, "To find the defendant guilty of robbery the intent to commit the theft, the intent, the state of mind to commit the theft must precede or be coterminous with the use of force." The court then repeated, for emphasis, "In other words, the defendant must have formed the intent to commit a theft before or during his use of force. Before or during the use of force." Then, correcting its previous statement, the court explained, "If you find defendant formed the

14

intent to commit a theft after the use of force then he cannot be found guilty of a robbery." The court then added, to distinguish robbery from armed robbery, "If the defendant is armed with or uses or threatens the use of a deadly weapon the crime becomes armed robbery." Defense counsel did not object to the new charge.

In addition to re-charging the jury, the court noted that the verdict sheet for the armed robbery count had omitted the phrase "in the course of committing a theft did use force." Thus, the original verdict sheet asked whether "McBride did use force upon Robert Funderberk and/or inflict bodily injury upon Robert Funderberk, and/or commit the crime of murder upon Robert Funderberk while armed with and/or by use of a deadly weapon." The judge supplied the jury a corrected verdict sheet that added the missing phrase.

Even assuming defense counsel was ineffective in failing to object to the erroneous charge and verdict sheet, counsel's failure did not cause prejudice — because the court corrected both errors before the jury reached a verdict. We also reject McBride's argument that the sentence distinguishing between robbery and armed robbery was deficient, and counsel was ineffective by failing to object to it.

In State v. Lopez, 187 N.J. 91 (2006), the Supreme Court held that our state's robbery statute does not contemplate "afterthought robbery." In other words, in order for one to be found guilty of robbery, "the intention to steal must precede or be coterminous with the use of force." Id. at 101. Therefore, when "a violent fracas occurs for reasons other than theft, and the perpetrator later happens to take property from the victim," the perpetrator would be guilty of assault and theft, but not robbery. Ibid.

The final charge accurately and clearly stated the law. The trial court's correction resolved any confusion the jury may have had. We reject McBride's argument that he suffered prejudice, because the jury was permitted to deliberate for an hour between when the court noticed the error and when it corrected it. The jury requested clarification on the jury charge and then took a lunch break. Upon returning, the jury deliberated for less than an hour, and presumably was awaiting the court's response when it returned. In any event, the court corrected the error in time for the jury to apply the accurate statement of law before reaching a verdict. We presume the jury followed the court's instruction. See State v. Loftin, 146 N.J. 295, 390 (1996).

We also reject defendant's contention that the final charge, in distinguishing robbery from armed robbery, erroneously used the word "crime"

A-2674-17T2

instead of "robbery."  We review a jury charge as a whole and avoid reading challenged portions in isolation.  See State v. Garrison, 228 N.J. 182, 201 (2017).  Contrary to defendant's argument, a jury would not reasonably infer "that any crime of violence becomes 'armed robbery' if a deadly weapon is used or deadly force threatened."  The preceding four sentences in the charge all discussed robbery.  The only other violent crimes the jury was instructed on were murder and felony murder; no reasonable juror would have understood the murder or felony murder elements to be somehow part of the armed robbery count.  Reading the entire charge, it is clear the word "crime" referred only to "robbery," and not any potential violent crime.  Therefore, defendant's trial and appellate counsel were not constitutionally deficient in failing to raise this claim at trial and on direct review.

## C.

McBride contends that his trial counsel was ineffective by failing to object when State Police scientist Coniglio presented her former colleague's conclusion that Funderberk's DNA profile was found in a DNA sample taken from McBride's pants.  McBride argues that such testimony violated his right of confrontation, as explained in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), which the Supreme Court issued six months before McBride's trial.  In

17

Melendez-Diaz, the Court held that affidavits reporting the results of positive drug tests were testimonial; the affiants were witnesses; and a defendant was constitutionally entitled to cross-examine the affiants at trial. Id. at 311.

We are unpersuaded that an objection would have ultimately succeeded in barring the DNA evidence linking McBride to the crime; nor is there a reasonable probability that exclusion would have produced a different result, given the surveillance video depicting McBride disposing of Funderberk's body.

Applying United States Supreme Court jurisprudence in this area, our State Supreme Court declined to "hold that the testimony of the original person to have performed forensic testing is required in all instances, regardless of the type of testing and the knowledge and independence of review and judgment of the testifying witness." State v. Roach, 219 N.J. 58, 60-61 (2014). Rather, "a truly independent reviewer or supervisor of testing results can testify to those results and to his or her conclusions about those results, without violating a defendant's confrontation rights, if" the independent reviewer or supervisor meets three requirements. State v. Michaels, 219 N.J. 1, 45-46 (2014). The testifying reviewer must (1) be "knowledgeable about the testing process"; (2) "independently verif[y] the correctness of the machine-tested processes and results"; and (3) "form[] an independent conclusion about the results." Ibid. In

Roach, the Court found that a State DNA scientist, utilizing DNA profiles a predecessor prepared, met those requirements. 219 N.J. at 80-81.

Even assuming trial counsel failed to object to Congilio's testimony because he was unaware of the right to do so on Confrontation Clause grounds, McBride has not demonstrated that the objection would have succeeded in barring Coniglio's testimony about Weldon's analyses. Rather, it would have likely triggered the sort of discussion that the testifying scientist in Roach provided. Notably, Congilio testified that she reviewed Weldon's notes, as well as her report. She utilized Weldon's profile of Funderberk's DNA, drawn from a sample of his blood, in preparing her own report of samples she tested after Weldon had left.[2] Coniglio matched Funderberk's profile Weldon prepared, to a DNA profile that Congilio personally prepared from a sample taken from Owens's sneakers. Thus, Coniglio was intimately familiar with Funderberk's DNA profile.

Furthermore, even if the State could not lay a sufficient foundation to enable Coniglio to present the laboratory test results that Weldon obtained, we discern no prejudice under Strickland's second prong. That is because the DNA

---

[2] Neither party has provided the court with Weldon's and Coniglio's reports, to enable us to assess the degree to which Congilio independently analyzed Weldon's work, in conducting her own.

evidence was not the only proof of McBride's presence. Sanford testified that McBride was present, and the video surveillance of McBride removing Funderberk's body from the truck, and disposing of it, proved exactly the same thing. In sum, McBride has not established a right to PCR based on the failure to object to Coniglio's testimony. Nor has he met the threshold for an evidentiary hearing. See R. 3:22-10(b) (stating that to secure an evidentiary hearing, a petitioner must "establish[ ] . . . a prima facie case in support of post-conviction relief" and the court must determine "there are material issues of disputed fact that cannot be resolved by reference to the existing record, and . . . an evidentiary hearing is necessary to resolve the claims for relief"); see also State v. Preciose, 129 N.J. 452, 462-63 (1992).

To the extent not addressed, McBride's remaining points lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION